■ TPL Associates, Appellant, v Helmsley-Spear, Inc., et al., Respondents.—Order and judgment, Supreme Court, New York County (Bruce McM. Wright, J.), entered on or about July 23, 1987 and August 5, 1987, respectively, which granted defendants-respondents' motion for summary judgment dismissing the complaint and awarded them judgment on their counterclaim, and which adjudged plaintiff-appellant liable for the sum of $43,000 with interest thereon, unanimously reversed, on the law, the motion denied, the judgment vacated and the complaint reinstated, without costs.

Supreme Court erred in granting summary judgment because a triable issue of fact existed as to whether defendants-respondents had met their fiduciary obligation of disclosing their conflict of interest "without ambiguity or reservation, in all its stark significance" *(Wendt v Fischer,* 243 NY 439, 443 [1926, Cardozo, J.]). Respondents undertook to act as broker

for plaintiff-appellant, a general partnership, which owned commercial property located at 610-620 West 132nd Street in Manhattan. Appellant's asking price for the property was "$3,000,000 all cash". In June 1984, respondent informed appellant's general partners, Theodore Sofia, Jr. and Paul Greenberg, that there was a prospective purchaser willing to pay $2.7 million for the property. The partners were told that Lal Sani would take title, together with members of his family, through an entity to be formed for that purpose. Respondent Earle S. Altman, a senior vice-president of Helmsley-Spear, Inc., successfully negotiated an agreement between the parties, and it was also agreed that appellant would pay a brokerage commission of $96,000.

Shortly before the contract of sale was to be signed on June 18, 1984, Jerome Gellman, appellant's attorney, learned that Altman might have an interest in the purchasing entity to be formed by Sani. When confronted with this, Altman claimed that he and other Helmsley-Spear brokers had agreed to acquire "nominal" interests in the purchasing entity in order to assure Sani that they would be aggressive in seeking tenants for the property after the sale. According to appellant, Altman assured Gellman that the Helmsley-Spear brokers would acquire no more than a 1 or 2% interest each and that their aggregate interest would not exceed 10% of the purchasing entity. Appellant also claims Altman was told that if, in fact, Helmsley-Spear brokers were the purchasers of the property, appellant would not pay any brokerage commission at all. Altman assured Gellman that this was not the case and he agreed to a $10,000 reduction in the brokerage commission. A paragraph was inserted into the contract of sale, acknowledging that certain members of Helmsley-Spear "may be principals" of the purchasing entity in addition to acting as brokers for the sale. Appellant then executed both the contract of sale and the brokerage agreement.

In February 1985, a limited partnership was formed to acquire title to the property. At the closing on February 11, the limited partnership certificate was provided to Gellman as proof that the persons signing on behalf of the partnership were authorized to do so. The certificate named Sani and Altman as general partners and Alan Helman, who, unbeknownst to Gellman, was a Helmsley-Spear broker, was listed as the sole limited partner with a 22.5% interest in the partnership profits.

The first $43,000 installment of the brokerage commission was paid by appellant at the closing. Thereafter, Greenberg

and Sofia, who knew that Helman was a Helmsley-Spear broker, reviewed the closing documents including the limited partnership certificate. Their suspicions were aroused when they saw that Helman had made a capital contribution of only $100 to the partnership. Upon checking the records of the New York County Clerk's office, they found that an amended certificate had been executed on the date of the closing and filed several weeks later. The amended certificate indicated that 6 of the 10 general partners were Helmsley-Spear brokers and the two limited partners were both corporate entities. Altman and Sani were the managing general partners and Helman, who had withdrawn as the original limited partner, was a general partner. The amended certificate also revealed that Altman and his Helmsley-Spear colleagues (identified in the amended certificate as the "Altman Partners") had contributed more capital and acquired a greater ownership interest in the partnership than the "Sani Partners".

Appellant refused to pay the second installment of the brokerage commission. Instead, it commenced this action to recover that portion of the commission already paid and the $300,000 reduction in the original listing, alleging breach of fiduciary duty, fraudulent representation and unjust enrichment. Supreme Court granted respondents' motion to dismiss the complaint on the ground that respondents' interest in the transaction had been disclosed to appellant and that this was evidenced by the provision inserted in the contract of sale. Further, the court noted that neither the contract of sale nor the brokerage agreement warranted that respondents' interest would not exceed 10%. The court held that parol evidence to the contrary was not admissible as the brokerage agreement was an integrated writing. The court also relied on the fact that, at the closing, appellant's counsel was shown the limited partnership certificate indicating that one of the Helmsley-Spear brokers' interest exceeded 10%.

Supreme Court erred in treating the relationship between the parties as one at arm's length, rather than as a fiduciary relationship between principal and agent. An agent is charged with a duty of loyalty and may not have interests in the subject transaction which are adverse to those of his principal. Where a conflict of interest exists, nothing less than full and complete disclosure is required of the agent. The question is not whether respondents represented that their interest in the purchasing entity would not exceed 10%, but whether appellant was "fully informed of every fact material to [its] interests" and whether it freely consented in the presence of such

knowledge *(Hasbrouck v Rymkevitch,* 25 AD2d 187, 189 [3d Dept 1966]). Disclosure which is "indefinite and equivocal does not set the agent free to bargain for his own account or for the account of a corporation which acts through him alone" *(Wendt v Fischer,* 243 NY, *supra,* at 443) or even for a partnership in which he has a substantial interest. The failure to make independent inquiries which would reveal the agent's adverse interest is immaterial, inasmuch as the principal is entitled to rely on the agent's representations and his complete, undivided loyalty.

A breach by the agent of this duty of loyalty is a fraud for which the agent is answerable in damages, and any compensation paid to him may be forfeit *(Beatty v Guggenheim Exploration Co.,* 223 NY 294, 304 [1918]; *Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133, 138 [1936]). The record in this case raises a substantial issue as to whether respondents have met their duty, as fiduciaries, of complete and unequivocal disclosure. Summary judgment was therefore improper. Concur— Murphy, P. J., Asch, Kassal and Rosenberger, JJ.