MELVYN BLACK et al., Respondents, v MTV NETWORKS INC. et al., Appellants.

First Department, November 21, 1991

**APPEARANCES OF COUNSEL**

*Joseph J. Santora* of counsel *(Michael S. Allen* with him on the brief; *Santora & Allen,* attorneys), for appellants.

*Peter F. Edelman* for respondents.

**OPINION OF THE COURT**

KUPFERMAN, J.

Defendant MTV Networks Inc. is presently a subsidiary of codefendant Viacom International, Inc. Plaintiffs, Melvyn Black and his sole proprietorship M. Black & Associates, are independent contractors who provide executive search and placement and other employment, recruiting and consulting services for the cable television industry. On August 25, 1986, before Viacom acquired MTV, the parties entered into a written agreement whereunder plaintiffs agreed to provide such services to MTV on retainer for two years, commencing January 1, 1986 and ending on December 31, 1987. The contract provided for an automatic extension of its original term for another two years unless MTV notified plaintiffs in writing of its intention not to renew and delivered such notice by registered or certified mail no later than October 1, 1987.

Thereafter, by registered letter dated October 1, 1987, MTV exercised its option not to renew the agreement, but its letter was not mailed until October 2, 1987. Subsequent to their receipt of such letter, plaintiffs disclosed a letter written and signed sometime in May or June 1987 by MTV's former president of network operations, but backdated to February 11, 1987, confirming the parties' understanding that the agreement was being extended immediately to and including December 31, 1989.

By letter, dated October 13, 1987, MTV notified plaintiffs that despite the purported prior extension, it was reaffirming its termination of the original agreement effective December 31, 1987. Subsequently, on October 21, 1987, MTV barred the individual plaintiff from its premises, thus preventing him from using an office that had been made available to him.

This action ensued, seeking money damages for breach of contract on the grounds: (1) that MTV's ejection of plaintiffs from its premises unjustly prevented them from performing their consultative services for defendants and earning the fees to which they were contractually entitled; (2) that MTV's exercise of its option was untimely; and (3) that the repudiation of the prior extension agreement was unjustified.

In the course of discovery, MTV learned the undisputed fact that from approximately 1981 to 1984, when he frequently worked for MTV on a series of successive, short-term agreements which preceded the contract of issue, plaintiff Melvyn Black had secretly made gifts totaling thousands of dollars to

MTV's director of personnel and that, in 1985, he made an interest-free loan of $30,000 to another MTV employee. MTV then moved for summary judgment dismissing the amended complaint on the ground that plaintiffs are precluded from any recovery for breach of contract since they had fraudulently obtained the contract in suit and had breached the implicit covenant of good faith and fair dealing in that contract by making such gifts and loan.

While plaintiff concedes the existence of such payments, he contends that they were not intended to influence the behavior of MTV employees, but were given for personal reasons. A further claim was made that the recipient of the gifts was not a decision maker, but exercised purely ministerial functions. However, as the IAS court found, it seems fairly clear that the recipient of Black's gifts was involved in his consulting work during the time she was receiving money from him and that, as director of personnel, she was involved in the decision-making process and was thus in a position to exert influence on his behalf, although it was unclear whether her loyalty was actually compromised.

Recently, in *American Assur. Underwriters Group v MetLife Gen. Ins. Agency* (154 AD2d 206, 208), this court (per Kassal, J.), in granting summary judgment to the defendant in a breach of contract action, held that, in making secret stock payments to defendant MetLife's employees, the plaintiff had breached the implied covenant of fair dealing and good faith implicit in all contracts. Such payments, we found, "eroded [the employees'] duty of undivided loyalty to their employer *(see, Sirkin v Fourteenth St. Store,* 124 App Div 384), and improperly created interests for these agents which were adverse to that of their principal. *(See, TPL Assocs. v Helmsley-Spear, Inc.,* 146 AD2d 468, 470.)" *(Supra,* at 208.)

In denying MTV's motion for summary judgment, the IAS court felt that, in *American Assur. (supra),* we did not directly address the issues of whether the plaintiff intended to influence the employees' conduct or whether the defendants were harmed and opined that those issues were not raised because the plaintiff and MetLife's employees were presumably strangers and there could be no other reason for the secret stock transfers except that they were intended to influence the employees' behavior. The court was further of the opinion that, absent a per se violation of the implied covenant of good faith such as an uncontroverted violation of a penal statute or an established code of professional responsibility, a question of

fact is presented as to whether, under the particular circumstances, there is bad faith rather than simply unseemly conduct. Thus, based upon plaintiff's claim that his gifts and loan were to longtime friends in need, the court found that MTV had not established as a matter of law a violation of Penal Law §§ 180.00 and 180.03 which define commercial bribery and require proof that a person intends to influence an employee and causes economic harm to the employer.

Although the employees in *American Assur. (supra)* were strangers to plaintiff in the sense that there was no claim made of a longstanding friendship, there was a claim in the appellate briefs that the gifts were made after the contract in question was executed and were not intended to influence the employees' conduct in relation to the affairs of MetLife. Be that as it may, regardless of the nature of the relationship between the giver and recipients of the gifts or loans or whether they caused economic harm, the operative and controlling factor is that the transactions were kept hidden from the recipients' employer.

While, in *Sirkin v Fourteenth St. Store* (124 App Div, *supra,* at 388), a violation of the then recently enacted commercial bribery statute was found, the thrust of that ruling was that an employer is entitled to the undivided loyalty of its employees in the performance of their duties involving discretion and trust. As the court stated: "The vice lies in making the agreement without the knowledge of the master." *(Supra,* at 391; *cf., Hadden v Consolidated Edison Co.,* 45 NY2d 466, 470.)

Thus, regardless of intent, motive, illicit purpose, or pecuniary loss, such secret payments improperly create interests for agents that are "adverse to that of their principal" and the principal's complete knowledge and approval is required of "any substantial advantage received by an agent" from third persons. *(American Assur. Underwriters Group v MetLife Gen. Ins. Agency, supra,* at 208.) And so, the concealment of such benefits from the principal, in and of itself, violates the covenant of fair dealing and good faith implied in every contract. *(Supra; see also, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.,* 30 NY2d 34, 45.) As a result, whether plaintiff's payments were made to strangers or friends in need, the mere nondisclosure of those dealings served to permit the employer, MTV, to terminate the agreement at issue.

In light of the foregoing, it is unnecessary to reach MTV's claim that the agreement at issue was fraudulently induced.

Accordingly, the order of the Supreme Court, New York County (Myriam J. Altman, J.), entered February 6, 1991, denying defendants' motion for summary judgment, should be modified, on the law, to grant said motion and dismiss the complaint, and, as so modified, the order should otherwise be affirmed, with costs.

SULLIVAN, J. P., ROSENBERGER, WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered February 6, 1991, modified, on the law, to grant defendants' motion and dismiss the complaint, and, as so modified, the order is otherwise affirmed, with costs.