**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**John SANDLES, Defendant–Appellant.**

**No. 95–2704.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1996.

Decided March 25, 1996.

Paul Kanter (argued), Office of the U.S. Atty., Milwaukee, WI, for Plaintiff–Appellee.

Frank Lipuma (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, BAUER, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

John E. Sandles pleaded guilty to bank larceny under 18 U.S.C. § 2113(b). On appeal he argues that the district court (1) should not have sentenced him as a career offender, even though the plea agreement stipulated that he be classified as such; and (2) should have given him a three-level reduction for acceptance of responsibility under the Sentencing Guidelines, rather than a two-level reduction. We affirm.

### I.

A federal grand jury charged Sandles with five counts of bank robbery under 18 U.S.C. § 2113(a). Sandles represented himself at trial, with his court-appointed lawyer serving as stand-by counsel. The jury convicted him, and the court sentenced him to five concurrent terms of 180 months (Offense Level 30, Criminal History Category VI/ Career Offender, Range 168–210 months). This court vacated the judgment, on grounds that the

district court did not sufficiently warn Sandles of the perils of proceeding *pro se. United States v. Sandles,* 23 F.3d 1121 (7th Cir. 1994).

On remand, Sandles continued to insist on representing himself, with court-appointed stand-by counsel. Sandles pursued an insanity defense, which caused his second trial to be postponed. He also filed a number of motions seeking to overturn or dismiss the indictment; the court twice granted Sandles' motion for a continuance. In February, 1995, Sandles indicated he wished to pursue plea negotiations. On June 15, shortly before trial was to begin, Sandles pleaded guilty to five lesser counts under 18 U.S.C. § 2113(b) ("bank larceny"). Each of the five counts charged that Sandles stole money "by force and intimidation."[1] The plea agreement stipulated that the crimes were crimes of violence, that Sandles was a career offender, and that his sentencing range, pursuant to U.S.S.G. § 4B1.1(E), would be 100–125 months incarceration (Offense Level 24, Criminal History Category VI/Career Offender). The government agreed to recommend a two-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.

At the sentencing hearing, Sandles sought to challenge his classification as a career offender, and argued for an additional one-level reduction for acceptance of responsibility. The district court ruled that challenging the career offender stipulation disturbed the plea agreement, and informed Sandles that if he wished to pursue such a challenge, the government would have the option of withdrawing from the agreement. The government indicated it would not accept the plea without the stipulation. The court granted a two-level reduction in the base offense level for acceptance of responsibility, and sentenced Sandles to five concurrent terms of 105 months in prison.

## II.

■ We first address the applicable standard of review. Sandles argues that we should review the district court's decision *de novo,* because it involves an interpretation of the Sentencing Guidelines. *United States v. Sebero,* 45 F.3d 1075, 1077 (7th Cir.1995). The government counters that the classification of a defendant as a career offender is a finding of fact subject to review for clear error. *Id.* The district court, however, did not make its own finding of fact; the court explicitly stated it was not making an independent review. Therefore, to the extent Sandles argues that the Guidelines compel district courts to make such an independent examination, appellate review is plenary. The sentencing transcript makes clear, however, that the district court found the plea agreement so unusual that it felt constrained either to accept it without modification, or reject it altogether. We review the court's decision to accept or reject a plea agreement for abuse of discretion. U.S.S.G. §§ 6B1.2(a), 6B1.4(d); *United States v. Greener,* 979 F.2d 517, 518 (7th Cir.1992).

■ Sandles argues that at the sentencing hearing, the district court should have let him challenge the stipulation that classified him as a career offender without otherwise disturbing the provisions of the plea agreement. This argument ignores the fact that plea bargains are contracts, albeit "unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *Carmine v. United States,* 974 F.2d 924, 928 (7th Cir.1992) (internal quotation omitted). As with other contracts, courts interpret disputed terms of a plea agreement according to the objective intentions of the parties. *United States v. Eppinger,* 49 F.3d 1244, 1251 (7th Cir.1995).

■ In the case at bar, the plain language of the plea agreement states "that the defendant is a 'career offender' as that term is used and defined in U.S.S.G. § 4B1.1." Nothing in the plea agreement suggests that the government understood Sandles could challenge this stipulation. Neither does Sandles suggest that the government deliberately led him to believe that he could challenge the stipulation, and then changed its tune

---

1. As an element of the crime of bank robbery, 18 U.S.C. § 2113(a), the government must prove that the accused committed the crime "by force and violence, or by intimidation." This element is missing from the lesser included crime of "bank larceny" under 18 U.S.C. § 2113(b).

after Sandles pleaded guilty. It is true that stipulations, under the Sentencing Guidelines, cannot bind the court, because the court is not party to the agreement. U.S.S.G. § 6B1.4(d). In contrast, stipulations do bind the parties themselves. To hold anything else would be to reduce stipulations to mere inconsequential gestures. For this reason, it is objectively reasonable to understand that the government agreed to charge Sandles with the significantly less serious crime of bank larceny in exchange for Sandles' agreement to plead as a career offender. Indeed, if this were an ordinary contract, it would have been reasonable for the court simply to enforce the contract as written.

 Nonetheless, because the agreement involved a plea of guilty to a serious offense, the court correctly concluded that concern for due process outweighed concern for freedom of contract. *See United States v. Daniels,* 902 F.2d 1238, 1243–44 (7th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Carmine,* 974 F.2d at 928. Accordingly, the court treated the parties' disagreement over the stipulation as a mutual misunderstanding. Where there is a mutual misunderstanding as to the material terms of a contract, the appropriate remedy is rescission, not unilateral modification. *See United States v. Southwestern Electric Cooperative, Inc.,* 869 F.2d 310, 314 (7th Cir.1989); *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.,* 853 F.2d 1392, 1397–98 (7th Cir. 1988). Consequently, the court correctly concluded that letting Sandles challenge his classification as a career offender disturbed a material term of the plea agreement. Because the court could not, consistent with due process, forbid Sandles from making such a challenge, the appropriate remedy was to give the government the opportunity to rescind the contract and return the parties to the *status quo ante.* Just as it is axiomatic that a defendant may withdraw from a plea agreement if the government breaks the contract, so the government may withdraw where the defendant breaks the contract. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *Daniels,* 902 F.2d at 1243.

 Sandles next argues that the district court should have independently rejected the stipulation as inaccurate, and altered the agreement accordingly.[2] As we noted above, the stipulations could not bind the court, because it was not party to the plea agreement. The court had discretion, both under the plea agreement and the Guidelines, to "determine the facts relevant to sentencing." U.S.S.G. § 6B1.4(d). The discretionary language indicates that the court may also accept stipulations it considers appropriate, though the Guidelines also note that it is improper for parties to stipulate to misleading facts. U.S.S.G. § 6B1.4, Commentary.

Nonetheless, the record here makes clear that in exchange for Sandles' guilty plea to bank larceny, the government dismissed the pending charges of bank robbery, 18 U.S.C. § 2113(a), against him. Fed.R.Crim.P. 11(e)(1)(A). The record also makes clear that, because of the plea agreement, law enforcement officials in Seattle would not pursue additional bank robbery charges against Sandles. Under the Sentencing Guidelines, this limited the court's discretion to accept the plea:

> [T]he court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.
>
> *Provided,* that a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Con-

---

**2.** The transcript of the sentencing hearing makes clear that Sandles' main goal at sentencing was, in effect, to have his cake and eat it too: he wanted the court's assurance that, even if he himself could not challenge the stipulation, the court would independently review the facts un-

derlying the career offender classification, then take them into account in sentencing without otherwise disturbing the agreement. The court declined to conduct such an independent examination in order to alter the plea agreement.

duct) in connection with the count(s) of which the defendant is convicted.

U.S.S.G. § 6B1.2(a).

■ Without the career offender classification, Sandles' sentencing range would have been 12–18 months (Criminal History Category V, Offense Level 7). This compares with the range of 84–105 months that the plea agreement produced, and the sentence of 180 months which Sandles received following his original conviction for bank robbery. The court at sentencing made clear its conviction that, considering the nature of Sandles' conduct, the plea agreement fell so close to the boundary of acceptability under § 6B1.2(a) as to give the court pause. Because of the extraordinary nature of the plea agreement, the court indicated that it would not modify the agreement, but felt bound either to accept or reject it. The court recognized that the stipulations did not bind it. Nonetheless, the court unmistakably implied that it was unwilling to impose a lesser sentence on Sandles, and that if it could not sentence Sandles as a career offender, it would be obliged to reject the entire plea agreement.[3] This is not inappropriate leverage to force Sandles to abandon a legitimate argument. Rather, it is consonant with the court's duty under U.S.S.G. § 6B1.2(a) to place on the record its reasons for finding the plea agreement acceptable.

The record demonstrates that the court did not abuse its discretion in deciding that the plea agreement was the minimum which was acceptable under the Guidelines. Nor would it have been an abuse of discretion for the court to reject the plea agreement rather than sentence Sandles to less than 105 months. Indeed, given the Guidelines' directive that the plea agreement "adequately reflect the seriousness of the actually offense behavior" and "not undermine the statutory purposes of sentencing or the sentencing guidelines," U.S.S.G. § 6B1.2(a), it would probably have been an abuse of discretion for the court to accept the plea and then impose a 12–18 month sentence on Sandles.

■ Finally, Sandles maintains that under the Sentencing Guidelines, the district court could not properly rely on the bare stipulations of the plea agreement. As a statement of policy, this is correct:

> [T]he court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

U.S.S.G. § 6B1.4, Commentary para. 3. In this case, however, it is apparent that the district court did not rely solely on the stipulations. The transcript of the sentencing hearing makes clear that despite declining to make a full independent review, the district court read and considered the Presentence Investigation Report, the evidence which Sandles submitted before the sentencing hearing, psychiatric reports, victims' statements, and the transcripts of Sandles' previous trial and sentencing. Contrary to Sandles' assertions, the court did not take the plea agreement at face value. Rather, it considered Sandles' conduct and the record as a whole, and concluded that a sentence of 105 months was appropriate under the circumstances. That is what the Guidelines require a court to do.

■ Besides, even if the court had erred in not making an independent review, that error was harmless. The record indicates that Sandles' career offender classification was proper under the Sentencing Guidelines, because the offense of conviction was a crime

---

**3.** Sandles accurately notes that he has a due process right to be sentenced on the basis of accurate information. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). He assumes, however, that if his version of the facts were correct, his remedy would be re-sentencing under a lesser classification. That assumption is wrong. Assuming arguendo that an independent review of the facts would show that Sandles does not merit career offender classification, Sandles would not have a due process right to be re-sentenced as a Class V offender. Instead, because the district court has already found, under the facts of this case, that the plea agreement would be unacceptable without the stipulation, the remedy would be to rescind the plea agreement, let the government reinstate the original bank robbery charges, and have the parties proceed to trial.

of violence, and Sandles had two prior convictions for crimes of violence. U.S.S.G. § 4B1.1. Sandles does not seriously dispute that the bank larceny charges constituted crimes of violence,[4] or that a prior conviction for attempted robbery was also a crime of violence. He argues, however, that a previous Washington conviction for attempted residential burglary should not qualify. Sandles notes that the Ninth Circuit holds that the Washington statute at issue sweeps too broadly to permit attempted burglary convictions automatically to qualify as predicate offenses under the Armed Career Criminal Act ("ACCA"). *United States v. Weekley*, 24 F.3d 1125, 1127 (9th Cir.1994) (interpreting 18 U.S.C. § 924(e)(2)(B)(ii)).

That argument ignores two important factors. First, this Circuit does not accept the approach the Ninth Circuit took in *Weekley*. *Id.* at 1126–27; *compare United States v. Davis*, 16 F.3d 212, 217 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994). Second, unlike the ACCA, the Guidelines' Application Notes make clear that Congress expressly included attempted burglary of a dwelling in its definition of "crime of violence." U.S.S.G. § 4B1.2(1)(ii), & Applications Notes 1–2.[5] Accordingly, the attempted residential burglary is a statutory crime of violence under the Guidelines.

Sandles' main contention is that he never used actual violence, and the underlying facts do not correspond to the labels which his crimes bear. This argument misses the mark. It is clear that Sandles pleaded guilty to "burglary of a dwelling" and "robbery," which fall within the statutory definition of "crimes of violence." That he now is deemed to have committed crimes of violence is one of the consequences of the guilty pleas. It is not the function of the sentencing court to re-litigate prior crimes. Consequently, because Sandles committed a violent crime, and had two prior convictions that meet the statutory definition of "crimes of violence," he was properly sentenced as a career offender.

### III.

Sandles also contends that he is entitled to an additional one-level reduction in his offense level, because he "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." U.S.S.G. § 3E1.1(b)(2). Sandles indicated on February 6, 1996, that he was willing to enter plea negotiations; he maintains he proposed pleading guilty to bank larceny. The government, according to Sandles, initially rejected this offer, but four months later agreed to the lesser charge. Acceptance of responsibility is a finding of fact which we review for clear error. *United States v. Covarrubias*, 65 F.3d 1362, 1367 (7th Cir.1995).

Sandles argues that the district court made no findings on the record regarding the timeliness of the plea, wrongly refused to consider the additional reduction because the court believed the plea agreement was an unusually good deal for Sandles, and penalized Sandles for initially having taken the case to trial. This court, however, will not overturn the decision of the district court, as long as the record supports its decision. *United States v. Francis*, 39 F.3d 803, 808 (7th Cir.1994). In the case at bar, the record provides ample support.

First, we note that the court approved direct plea negotiations on February 6, 1995. The plea agreement was filed June 6, 1995; Sandles pleaded guilty June 15. Sandles maintained an active motion practice during negotiations. In weighing a reduction

---

4. Although force, intimidation, or violence is not an element of the crime for which Sandles was convicted, 18 U.S.C. § 2113(b), the Guidelines provide that a "crime of violence" also includes offenses that "otherwise involved conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). Not only did the crimes to which Sandles pleaded guilty expressly charge him with using "force and intimidation," but the government provided evidence that when Sandles committed the crimes, he suggested by both word and gesture that he was armed, and otherwise frightened the tellers whom he robbed.

5. Because the ACCA does not include attempts in its definition of "violent felony," courts must determine whether an attempt "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); *Davis*, 16 F.3d at 217.

under § 3E1.1(b), courts generally consider when the defendant actually pleads guilty, not when he enters into negotiations. *Francis*, 39 F.3d at 808. Sandles, however, implies that he was willing to plead guilty to bank larceny in February, and should not be penalized simply because the government did not come around to this position until June. We need not reach this argument, because Sandles' actions before entering plea negotiations are sufficient to support the district court's decision.

We vacated Sandles' conviction on April 27, 1994. The docket reveals that from June, 1994 until February 6, 1995, Sandles indicated he wished to proceed to trial *pro se*; filed notice of his intent to rely on an insanity defense, causing the court to schedule a series of psychiatric examinations and remove the trial from the calendar; filed motions to modify and review bail; and filed motions to overturn and dismiss the indictment. These actions did not serve the interests of judicial economy, and contained no hint that the government could ignore preparing for trial. Accordingly, this activity suffices to support the district court's decision to deny Sandles the reduction under § 3E1.1(b). Finally, although noting the initial trial and appeal, the district court explicitly stated that it was not punishing Sandles for the prior proceedings.

AFFIRMED.