UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernest WALKER, Defendant–Appellant.

No. 95–4079.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 3, 1996.

Decided Oct. 15, 1996.

Barry Rand Elden, Chief of Appeals, Gail Brashers–Krug (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Allen E. Shoenberger, Michael Gill, Law Student (argued), Loyola University School of Law, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The defendant pleaded guilty to one count of conspiracy to commit credit card fraud and was sentenced to 37 months in prison. The district judge directed that the sentence be served after the completion of a sentence that the defendant was already serving for federal parole violation. The defendant completed that sentence at the end of August 1996. The sentence that he is challenging was imposed in December of 1995, so the effect of making it consecutive is to extend his imprisonment by nine months. The defendant challenges the sentence on two grounds. The first is that it is too long, and the second (with which we'll begin) is that it should not have been made wholly consecutive to the sentence he was serving.

■ The discretion that the sentencing guidelines grant the district judge to make the sentence in a case such as this concurrent or consecutive, or partly one and partly the other, is very broad. U.S.S.G. § 5G1.3(c) and commentary thereto; *United States v. McCarty*, 82 F.3d 943, 950–51 (10th Cir. 1996). We do not understand the defendant to be contending that the discretion was abused otherwise than by the judge's retraction of a representation that he had made at the arraignment. A broader attack on the

district judge's decision to make the sentence wholly consecutive would get nowhere. There is a strong presumption in favor of consecutive sentencing when as in this case the offense was committed while the defendant was on parole, probation, or supervised release. U.S.S.G. § 5G1.3, application note 6; see *United States v. Smith*, 80 F.3d 1188, 1192 (7th Cir.1996); *United States v. Rogers*, 897 F.2d 134, 136–37 (4th Cir.1990).

■ When the defendant was arraigned, at the end of March 1995, he was already in federal prison on his previous sentence for federal parole violation, so there was no point in committing him to federal custody. Had his release been imminent, the issuance of a detention order pending the disposition of the new charges would have been appropriate if the criteria for pretrial detention were met, 18 U.S.C. § 3142(e), and let us assume they would have been met—but he was not due to be released for another seventeen months. Nevertheless, the defendant's lawyer requested that a detention order be entered—and he added, and the prosecutor and the district judge concurred, that the effect of the order "would be that his time, if he got any time on this case, would run concurrent" with the sentence for parole violation.

We don't know where this conception of the effect of a detention order—a conception that if accepted would have the effect of shortening the defendant's imprisonment by the period that the order was in force, making the sentence partly concurrent and partly consecutive—comes from. No source is suggested in the defendant's brief, and we cannot think of one ourselves. What is true is that the Bureau of Prisons can give a convicted defendant credit for time served in official detention, 18 U.S.C. § 3585(b), including detention pursuant to a detention order, *Reno v. Koray*, —— U.S. ——, ——, —— n. 4, 115 S.Ct. 2021, 2026, 2027 n. 4, 132 L.Ed.2d 46 (1995), and maybe counsel thought that a detention order would make his client eligible for this credit. It would not. The statute is explicit that you can get credit against only one sentence, and the defendant was already getting credit against the sentence for his parole violation. The language of the statute to one side, the defendant's argument if ac-

cepted would mean that an important sentencing decision—whether to enter a consecutive or a concurrent sentence—would be made irrevocably before the sentencing hearing, and indeed before the trial. Sentence first, trial afterward, is a little too Lewis Carroll an idea to be plausibly imputed to the designers of the modern federal criminal justice system. Cf. *United States v. Werker*, 535 F.2d 198, 201–02 (2d Cir.1976).

We could understand an argument that the lawyers' and the judge's erroneous conception of the effect of a detention order induced the defendant to plead guilty, in which event the remedy would be to relieve him from the plea. E.g., *McCarthy v. United States*, 394 U.S. 459, 472, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969); *United States v. Saenz*, 969 F.2d 294, 296 (7th Cir.1992). But that is not the defendant's argument, and he does not seek to withdraw his plea. His argument is that the judge was bound by the representation made at the arraignment concerning the effect of a detention order to make the sentence issued after the sentencing hearing concurrent. There is no legal basis for the argument. *United States v. Renaud*, 999 F.2d 622, 625 (2d Cir.1993). This is not a case in which the court, having agreed to sentence the defendant to $X$ years in prison, breaks the agreement without good cause and sentences him to $X + Y$ years. See Fed.R.Crim.P. 11(e)(3); *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir.1996). In such a case, on the authority of *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), specific performance of the agreement, rather than merely withdrawal of the guilty plea underlying it, can be decreed and should be if, as in *United States v. Ritsema*, 89 F.3d 392, 402 (7th Cir.1996), it is the only effective remedy. It would be if the defendant, having been permitted by way of remedy only to withdraw the plea, and having then gone to trial, had received a much harsher sentence. For in that case the withdrawal of the plea would not have put the defendant in the position he would have occupied had the judge not violated the plea agreement. *Santobello* itself involved a breach of a plea agreement by the prosecutor rather than by the judge, but the remedial implications are similar. See *United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992).

The case for specific performance is weakened if the judge, in promising a particular sentence, was acting ultra vires (for example by participating in the guilty-plea negotiations himself, which is forbidden by Fed. R.Crim.P. 11(e)(1)). *United States ex rel. Selikoff v. Commissioner of Correction*, 524 F.2d 650, 653–54 (2d Cir.1975). To decree specific performance in such a case would be to give effect to an unlawful promise. Such a case is best regarded as one in which the agreement is vitiated by mistake or illegality, making the appropriate remedy rescission, which would put the parties back where they were before the agreement was made. The defendant who wanted more in such a case would be faced with an uphill struggle to prove estoppel against the government. He would have to make a very strong case (how strong we needn't speculate on here) both that he had reasonably relied to his detriment and that he could not be restored to the status quo ante by rescission of the plea. *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180, 184 (7th Cir.1977); *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185, 186–87 (7th Cir.1977) (per curiam); *Carter v. McCarthy*, 806 F.2d 1373, 1377 (9th Cir.1986).

The present case is not an appropriate one for specific performance. As in a case of mutual mistake, see, e.g., *Colfax Envelope Corp. v. Local No. 458–3M*, 20 F.3d 750, 752–53 (7th Cir.1994), where the proper remedy is rescission, the parties' bargain was founded on a mutual misunderstanding of the legal consequences of the bargain. Alternatively and equivalently, it is a case in which the bargain is vitiated by illegality—an attempt to attach an unauthorized consequence to an inappropriate order (the detention order). Rescission would be the proper remedy, and would restore the defendant to the approximate status quo ante. We say "approximate" because he has already served a little time under the new sentence. Strictly, restoration to the status quo ante requires that the defendant have served no time under his new sentence, since that is the situation he would have been in at the time of the plea

hearing. But because Walker's old sentence did not expire until this past August, the amount of time served under the new sentence has been minimal, making rescission the proper remedy and specific performance an excessive remedy. By failing to seek rescission, therefore, Walker has forfeited the only remedy to which he is entitled in the circumstances.

■ We move to the second argument. The defendant's guidelines range was 24 to 30 months. The judge departed upward by two offense levels (from 10 to 12) and gave the defendant the top of the sentencing range for the higher level, 37 months as we said. The basis for the upward departure was that the defendant's history of convictions, which placed him in the highest category (Category VI), nevertheless understated his true criminal history. This is, of course, a valid basis for an upward departure, U.S.S.G. § 4A1.3, and the defendant's argument that he did not receive adequate notice that the judge might depart is refuted by the presentence investigation report, which in a section listing factors that might warrant an upward departure provided adequate notice. *United States v. Johnson,* 53 F.3d 831, 833–34 (7th Cir.1995); *United States v. Beatty,* 9 F.3d 686, 688 (8th Cir.1993).

The defendant was 44 years old at the time of sentencing. Between the ages of 17 and 38 he had been convicted 13 times, for offenses (mainly felonies) ranging from armed robbery and burglary to forgery, theft, fraud, and pimping. These offenses, after the exclusion of those too old to be counted under the criminal history guideline, earned him a total of 24 criminal history points. In addition, he had been arrested but not convicted on 23 other occasions, and twice was charged with murder but not convicted; no criminal history points were awarded for these other arrests and charges. Only 13 criminal history points are required to get you into Category VI, see U.S.S.G. ch. 5, pt. A, so, quite apart from the arrests that did not lead to conviction, and the murder charges, and convictions too old to be included in the computation of criminal history, the defendant's criminal history score under the guidelines understated his true history.

■ The defendant does not deny that the judge could have based the two-level upward departure solely on the excess of criminal history points over the number required for Category VI, *United States v. Lewis,* 954 F.2d 1386, 1397 (7th Cir.1992); *United States v. Black,* 78 F.3d 1, 8 (1st Cir.1996), not to mention on the fact that the defendant is clearly a career criminal—a one-man crime wave—almost certainly incorrigible by the threat or actuality of punishment. His recent criminal activity is nonviolent, hence unlikely to be dampened appreciably by the onset of middle age. The defendant argues only that the judge relied on impermissible factors, along with the permissible ones, in departing upward—the defendant's many arrests that did not result in convictions, convictions for offenses that took place too long ago to be counted in the computation of criminal history points, the murder charges that did not result in convictions, and the fact that the criminal justice system had heretofore treated the defendant leniently.

The last factor is proper even where as in this case previous leniency does not have the effect of dropping the defendant into a lower criminal history category than he would be in had he been sentenced with proper severity. When a defendant responds to lenient treatment by committing crimes as soon as he is released, the implication is that a severe sentence is necessary to prevent him from continuing to engage in criminal activity. Cf. *United States v. Stumpf,* 938 F.2d 172, 174 (10th Cir.1991).

The defendant's complaint about the judge's use of the murder charges is frivolous. The judge stated: "you were investigated for at least one murder [actually two]. No charges were brought. We do not charge you with that." (Emphasis added). (Actually charges had been brought.)

■■ And outdated convictions for serious offenses, even though they are offenses dissimilar to the one for which the defendant is being sentenced, are usable for purposes of making an upward departure. U.S.S.G. § 4A1.2, application note 8; *United States v. Johnson, supra,* 53 F.3d at 835 n. 4. The offenses that the defendant committed as a

young man were not youthful peccadilloes. They were pieces in a lifelong pattern of criminality. It is true that some of the defendant's old convictions, notably those for shoplifting and for pimping, did not involve "serious" offenses within the meaning of the guidelines. *United States v. Joshua*, 40 F.3d 948, 953 (8th Cir.1994); cf. *United States v. Wyne*, 41 F.3d 1405, 1408–09 (10th Cir.1994). But they could be considered for the limited purpose of establishing the incorrigible character of the defendant's criminal propensities. See U.S.S.G. § 4A1.3; *United States v. Joshua, supra*, 40 F.3d at 953.

■ That leaves the arrests that did not result in conviction. About them the judge said, "some of that might not have been good, but the law of averages says that if you get arrested, I do not know, ten more times, twenty more times—somewhere in there— you probably did something you did not go down for." That is a realistic comment, but the guidelines do not permit the use of an arrest record to jack up a defendant's sentence. U.S.S.G. § 4A1.3. The judge should have ignored the arrests. The question is whether the error is harmless, *Williams v. United States*, 503 U.S. 193, 202–03, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992), or stated otherwise whether there is a reasonable likelihood that the judge would have given the defendant a lighter sentence had he ignored all the arrests that did not result in conviction. We think there is not, given the judge's strong remarks about the number of the defendant's convictions and about the fact that the defendant could be described only as a career criminal. A 37–month sentence is light for a career criminal. We do not think it would have been lighter had the presentence investigation report listed no arrests that did not lead to conviction.

Speaking of light sentences, we cannot forbear to remark our astonishment at the government's handling of this case, quite apart from its failure to pick up on defense counsel's erroneous description of the effect of a detention order. Although the evidence of the defendant's guilt of the credit card frauds with which he was charged appears to have been strong, the government entered into a plea agreement under which it agreed to drop all but one count, to recommend that the judge give the defendant the minimum sentence on that count (24 months), and not to oppose making that sentence concurrent with the sentence he was serving. Given that under the government's understanding of the effect of the detention order the sentence for violating parole would have begun to run in March of 1995, roughly 17 months before the expiration of the defendant's current sentence, and given good time credits that the defendant might be expected to receive under 18 U.S.C. § 3624(b), the government was agreeing to recommend a net sentence of roughly 4 months for the defendant's crime. Not only would such a sentence be absurdly lenient given the defendant's criminal history, but we cannot understand why the government would invest the resources necessary to investigate and prosecute the defendant in return for so meager a payoff in punishment. We raised these questions at the argument. The government's lawyer had no answers.

AFFIRMED.