UNITED STATES of America, Plaintiff–Appellee,

v.

Robert HAUPTMAN, Defendant–Appellant.

No. 96–3840.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1997.

Decided March 27, 1997.

Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division and Brian R. Harvey (argued), Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, for Plaintiff–Appellee.

William T. Huyck (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and MANION, Circuit Judges.

POSNER, Chief Judge.

Robert Hauptman pleaded guilty to conspiracy to transport in interstate commerce securities and money worth more than $5,000 that he knew had been taken by fraud. 18 U.S.C. §§ 371, 2314. Sentenced to serve 21 months in prison and to pay restitution of $10,000 to his victim's insurer, he challenges the prison sentence. With the assistance of an employee, codefendant Sisti, Hauptman had bribed codefendant Sommers, a purchasing agent for the Leo Burnett advertising firm, to purchase hundreds of thousands of dollars worth of unneeded cleaning supplies, at exorbitant prices, from a company controlled by Hauptman. Hauptman had offered the bribes to Sommers, a total of at

least $6,000, rather than Sommers having extorted them from Hauptman; and (we quote from a stipulation of facts entered into by the parties) "Hauptman was able to afford the payments he made to Sommers out of the profits [that Hauptman's firm] made on its sales to Leo Burnett, thus, defrauding Leo Burnett out of the money Hauptman and Sisti were improperly using to bribe Sommers." The fraud took place over a period of about a year and succeeded in extracting almost $350,000 in purchases by Leo Burnett of cleaning supplies from Hauptman's firm before Leo Burnett wised up to the fraud and turned the defendants in.

The plea agreement recites that the proper guideline to be used in calculating the base offense level is section 2B4.1, the guideline for commercial bribery, yielding (since the total bribes are assumed to have been between $5,000 and $10,000, though they may have been higher) an offense level of 10. See §§ 2B4.1(b)(1), 2F1.1(b)(1)(C). Given Hauptman's criminal history and a further adjustment for acceptance of responsibility, the use of the commercial-bribery guideline put him in a sentencing range of only 4 to 10 months. But the plea agreement was emphatic that its validity was not contingent on the court's concurring with the parties' calculation of the sentencing range; that the probation service would conduct its own investigation and the judge would make his own calculation of the guidelines range; and that the maximum sentence for Hauptman's offense was five years, not 10 months.

Hauptman pleaded guilty pursuant to the plea agreement, and the probation service then conducted its investigation, on the basis of which the judge determined at the sentencing hearing that Hauptman had caused Leo Burnett to lose between $120,000 and $200,000. This determination led the judge to conclude that the proper guideline for sentencing Hauptman was not the commercial-bribery guideline, but the fraud guideline, U.S.S.G. § 2F1.1, under which the offense level (given the amount of the loss, § 2F1.1(b)(1)(H)) was (after a further adjustment) 14, and the sentencing range 18 to 24 months. Entitled as he was to consider the facts developed in the probation service's

investigation as well as the stipulated facts, U.S.S.G. § 6B1.4(d) (policy statement and commentary); *United States v. Sandles*, 80 F.3d 1145, 1148 (7th Cir.1996), the judge reasoned that the bribing of Sommers, rather than being the essence of the offense, was merely the means for defrauding Sommers's employer. Hauptman objects that the judge's reasoning is contrary to Application Note 13 to the fraud guideline, which provides that where the indictment setting forth the count of conviction describes an offense "more aptly covered by another guideline," the other guideline should be applied in lieu of the fraud guideline. This is in recognition of the heterogeneity of the misconduct forbidden by federal fraud statutes. Hauptman also argues that the judge didn't think he had a choice of which guideline to apply, but this is a misreading of the judge's remarks at the sentencing hearing.

█ We think the judge was right that fraud describes Hauptman's offense better than bribery. Indeed we cannot fathom the government's thinking in acceding in the plea agreement to the use of the bribery guideline instead. (Inquiry at argument did not elicit a coherent explanation.) In the usual case of commercial bribery (on which see, e.g, *Mantek Division v. Share Corp.*, 780 F.2d 702, 705 n. 3 (7th Cir.1986); *Black v. MTV Networks Inc.*, 172 A.D.2d 8, 576 N.Y.S.2d 846 (1991)), either the person giving the bribe is being shaken down by a customer's purchasing agent, or, if the briber is the one taking the initiative, his objective is merely to get "his share" of the customer's business. His prices, quality, and quantities may be as good or nearly as good as those of his competitors, so that the loss that the bribe causes the employer of the bribed individual is negligible or slight. Here the indictment, stipulated facts, and results of the probation service's investigation establish to the modest level of certitude required in sentencing that Hauptman endeavored through the bribing of Sommers to extract substantial revenues by selling Leo Burnett unneeded supplies. Between one-third and almost two-thirds of these revenues were in excess of the value received by Leo Burnett, marking the advertising company as a victim of a substantial fraud. It is not, to repeat, merely a case in

which a bribe deprives the bribed employee's employer of the employee's undivided loyalty. It is a case in which bribery is the means used to defraud that employer of a substantial amount of money. The plea agreement, as we noted, expressly bound the defendant to the consequences of the judge's correcting the parties' erroneous interpretation of the guidelines.

■ The judge also committed no error in raising the offense level because the defendant was the organizer or leader of a criminal activity involving more than one participant. See U.S.S.G. § 3B1.1(c). The scheme to defraud Leo Burnett had three participants. Hauptman was the organizer of the trio. He approached Sommers, who, it is true, was known as a "taker"; but it was Hauptman who initiated and led the scheme. Sommers was his agent, receiving a relatively modest compensation for steering business Hauptman's way, and Sisti was Hauptman's tool.

■ Hauptman argues that the judge violated Fed.R.Crim.P. 11(e)(2) by failing to advise him during the guilty-plea hearing that if the judge disagreed with the sentencing recommendations in the plea agreement the defendant would not be free to withdraw his guilty plea. It's true; the judge didn't advise him; this was a violation of the rule. (We do not understand the government's failure to acknowledge this outright. The rule is clear; it was violated.) But as in *United States v. Bennett*, 990 F.2d 998, 1004–05 (7th Cir.1993), the violation was harmless, so it did not require the judge to let Hauptman withdraw his plea. Fed.R.Crim.P. 32(e). The plea agreement was emphatic that the defendant would not be able to withdraw his plea if the judge disagreed with the sentencing recommendations in the agreement. Hauptman is a businessman, represented by an experienced criminal lawyer. He and his lawyer plainly thought they had a great deal—Hauptman had stolen hundreds of thousands of dollars, but might get off with four months of home detention rather than the years of imprisonment that the gravity of his crime and the difficulty of detecting it warranted. See U.S.S.G. § 5B1.1(a)(2). They gambled on the judge's accepting the deal that the government had struck with the defendant. They lost.

■ We do not think the government violated the agreement when, just after the judge told the parties that the plea agreement was not in the interest of justice, the prosecutor remarked that the defendant had acknowledged in the plea agreement that he had engaged in fraud as well as in bribery. This was a simple statement of fact, and if it contained a hint that the prosecutor would not be broken-hearted if the judge jacked up the sentence, it was not followed up by any suggestion that the judge use the fraud guideline. The prosecutor repeated several times that the government was standing by its agreement to recommend the use of the bribery guideline and urged that Hauptman be sentenced in a range of only 4 to 10 months. The defendant is wrong that the prosecutor supplied the judge with the calculation of Leo Burnett's loss that was used to apply the fraud guideline. The loss was calculated by Leo Burnett's insurance company and furnished by the company directly to the probation service. The government opined to the judge that the loss was only $9,000.

■ The government is not permitted to pull the rug out from under a defendant who has negotiated a plea agreement, by taking steps to induce the judge to give a higher sentence. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *United States v. Sandles*, supra, 80 F.3d at 1148. But the single statement about the defendant's having engaged in fraud as well as bribery, while unnecessary and inappropriate, is not a sufficient breach of the agreement to require its rescission. "Plea agreements are contracts, and their content and meaning are determined according to ordinary contract principles." *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992); see also *United States v. Daniels*, 902 F.2d 1238, 1243 (7th Cir.1990). The concept of substantial breach has a role to play in plea agreements as in ordinary contracts, as the courts have recognized in cases in which the defendant seeks to excuse his breach on the ground that it was not sub-

stantial. *United States v. Ataya*, 864 F.2d 1324, 1330 (7th Cir.1988); *United States v. Wood*, 780 F.2d 929, 931 (11th Cir.1986) (per curiam). We don't see why the same principle should not apply when the government is accused of having broken the agreement; and although we cannot find a case that explicitly so holds, our recent decision in *United States v. Feichtinger*, 105 F.3d 1188 (7th Cir.1997), is close.

There is an air of unreality about Hauptman's argument. If the government did violate the plea agreement, Hauptman's remedy is rescission, *United States v. Walker*, 98 F.3d 944, 946 (7th Cir.1996); and since the agreement was unusually favorable to him, it is hard to believe that he would benefit either from standing trial or from negotiating a new agreement.

We note in closing our puzzlement at the government's handling of this case. A person who should have known better—who is not ignorant, impoverished, desperate, deranged, or otherwise on the margins of society—steals hundreds of thousands of dollars. The government's response is to negotiate a plea agreement, based on a misreading of the federal sentencing guidelines, that if rubberstamped by the judge might have resulted in a nominal punishment of a serious crime. To compound its insouciance, the government acquiesced in nominal restitution and no fine. At argument we were told that the government did not press for an order of full restitution because the defendant has children. The needs of his children are a legitimate concern, but as a businessman who will be released from prison in a short time this defendant has a potential earning capacity some part of which ought to be devoted to making whole the victim of his fraud (or the victim's insurer, if insurance shifted the loss to the insurer). The government's handling of this case might lead one (and not for the first time; see *United States v. Walker*, supra, 98 F.3d at 948) to wonder whether it takes white collar crime seriously. Such crime is not as feared as violent crime or drug offenses are, but like the latter it requires heavy sentences to deter because it is potentially very lucrative. We do not know how much Hauptman actually stole or how much of the loot he may have squirreled away, but it is not beyond the imaginable that had the judge sentenced him in accordance with the plea agreement Hauptman might have thought himself better off committing his crimes, even though he was caught—and there was no certainty that he would be caught.

AFFIRMED.