**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Udo MANKIEWICZ and Glenn Zawadzki,**
**Defendants–Appellants.**

**Nos. 96–2594, 96–2807.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1997.

Decided Aug. 8, 1997.

Barry Rand Elden, Chief of Appeals, Alan N. Grossman (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

E. Steven Yonover (argued), Chicago, IL, for Defendant–Appellant Udo Mankiewicz.

Marc W. Martin (argued), Chicago, IL, Thomas M. Breen, Martin, Breen & Merrick, Chicago, IL, for Defendant–Appellant Glenn Zawadzki.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

In these direct criminal appeals, Udo Mankiewicz and Glenn Zawadzki challenge the sentencing determinations of the district court that followed their pleas of guilty to conspiring to possess marijuana with intent to distribute. *See* 18 U.S.C. § 846. Each defendant was sentenced to 87 months in prison, a fine, and four years' supervised release. For the reasons set forth in the following opinion, we reverse the judgments of the district court and remand the cases for further proceedings with respect to the sentences.

## I

### BACKGROUND

The basic facts of the underlying offense are not in dispute. In February and March 1994, Mr. Mankiewicz discussed buying marijuana with a confidential informant named "Bob." On March 10, Bob delivered 500 pounds of marijuana at a cost of $550 per pound to a motel parking lot. Glenn Zawadzki and his father led Bob to Mr. Zawadzki's warehouse. Upon arrival, Bob drove his marijuana-laden recreational vehicle inside, and the three men then unloaded the bales. When Mr. Mankiewicz arrived, he refused the delivery because he did not like the quality. Bob left with the rejected load.

On June 21, 1994, Bob delivered 700 pounds of marijuana at a cost of $700 a pound. Mr. Mankiewicz inventoried this marijuana and approved it. He paid Bob $195,000 as down payment for the marijuana. At sentencing, both defendants contended that the rejected load ought not be considered in calculating the offense level.

In their plea agreements each defendant stipulated to prior drug deals with Bob between 1986 and 1989, involving a total of 800 pounds of marijuana. The plea agreements differed, however, with respect to the significance of those transactions in the sentencing process. Mr. Mankiewicz stipulated that these prior drug transactions constituted "relevant conduct" within the meaning of U.S.S.G. § 1B1.3(a)(2); Mr. Zawadzki, although admitting his participation in the transactions, did not acknowledge that these actions constituted "relevant conduct."

In the presentence report and its supplement, the probation officer recommended that the total amount of marijuana be calculated at 2,000 pounds. This figure included both the 500 pounds delivered but returned March 10, 1994 and the 700-pound load delivered June 21, 1994. It also included as relevant conduct the 800 pounds purchased from

Bob between 1986 and 1989. In addition, the probation officer recommended that each defendant receive a 2–level upward adjustment in his offense level on the ground that each individual was an organizer or manager. *See* U.S.S.G. § 3B1.1(c).

At their respective sentencing hearings, each defendant took exception to the recommendations contained in the presentencing report. As noted earlier, both defendants objected to the inclusion of the amount of marijuana that was rejected. Mr. Zawadzki also objected to the inclusion of the previous sales on the ground that these activities did not constitute "relevant conduct." He claimed as well that he ought not be sentenced as an organizer or manager.

The district court concluded that the March 10 delivery ought to be included in the calculation. In its view, the receipt of this delivery "was no less a crime simply because Mr. Mankiewicz decided he wanted a better quality, and the delivery of the substitute load was no less a crime because it was a substitute for the original ... marijuana." R.100 at 32. The court also included the prior sales in each calculation as "relevant conduct." Finally, the court determined that each defendant was a leader or organizer of the transactions under U.S.S.G. § 3B1.1(c).

## II

### DISCUSSION

A. *Counting the Rejected Delivery*

■ Both Mr. Mankiewicz and Mr. Zawadzki contend that the district court ought not have counted the earlier rejected shipment of March 1994. The government agrees with the defendants that the district court committed error in this regard and requests that we remand the matter to the district court for redetermination of the sentence. We believe that the position taken by the parties is the correct one and that the district court's acceptance of the probation officer's recommendation was error.

■ At the outset, we think it important to emphasize that the agreement of the defendants and the government on this matter is not binding on the district court. The court was therefore quite correct in determining that, despite the agreement of the parties, it had an independent responsibility to determine the legal question as to whether the weight of the rejected load ought to be included in the base offense level.

We also believe, however, that the parties are correct in their submission that the base offense level ought not include the rejected amount. The starting point of the court's sentencing analysis must be the nature of the offense of conviction. Here, the defendants were charged with, and pleaded guilty to, a single count of conspiracy to possess with intent to distribute marijuana. The evidence established that Mr. Mankiewicz negotiated with Bob for the delivery of a single load of marijuana. As the government points out in its brief, there is no question that, throughout the charged conspiracy, his intent, and that of Mr. Zawadzki, was to acquire only that load. No other quantity was foreseeable to them.

We think the government is correct when it responsibly notes, in both its brief and oral submission, that this result is the one most compatible with the intent of the Guidelines. As counsel for the government pointed out, the commentary to U.S.S.G. § 2D1.1 states that, "in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not the defendant." U.S.S.G. § 2D1.1 comment. (n.12). As counsel pointed out at oral argument, this section is intended to ensure that unscrupulous law enforcement officials do not increase the amount delivered to the defendant and therefore increase the amount of the defendant's sentence. Although there is absolutely no evidence that such a motivation actually existed in this case, the facts demonstrate the danger. At oral argument, we were informed that the marijuana that was supplied was the government's. It would have been possible for the confidential informant to supply low-grade marijuana in the expectation of its being rejected and in that way to increase the amount received, but never retained for distribution, by the defendants.

403

## B. Counting Uncharged Drug Transactions as "Relevant Conduct"

### 1.

■■■ Mr. Zawadzki submits that the district court erred in including the earlier uncharged marijuana offenses in the "relevant conduct" calculations.[1] "Relevant conduct" includes "all acts and omissions committed . . . by the defendant [that were] part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a). In determining whether uncharged offenses should be classified as "relevant conduct," our case law holds that the district court ought to consider the similarity, regularity and temporal proximity of the uncharged acts.[2] See United States v. Beler, 20 F.3d 1428, 1437 (7th Cir.1994); United States v. Sykes, 7 F.3d 1331, 1335–37 (7th Cir.1993). Mr. Zawadzki asserts that the earlier transactions at issue here do not

meet these criteria. He points out that the earlier activity took place over 5 years prior to the charged conspiracy. Therefore, he argues, it cannot be considered part of the same course of conduct because there is a lack of temporal proximity between the charged offense and the prior conduct 5 years earlier. In his view, the acts also lack similarity; although they involved marijuana, there were significant differences in the amounts involved. Finally, he contends that regularity is also missing; the time gap between the incidents is too great, and the acts do not repeat at fixed intervals. In short, he contends that the prior behavior is discrete, separate conduct, not part of the same course of conduct as the offense of conviction.

Mr. Zawadzki also contends that the district court did not make particularized findings that the unconvicted activities bore the necessary relation to the convicted offense.

1. Mr. Mankiewicz has chosen not to bring any contention with respect to the determination of "relevant conduct" to this court. Unlike Mr. Zawadzki, Mr. Mankiewicz stipulated in his plea agreement that the earlier offenses constituted "relevant conduct."

Plea agreements are contractual in nature, albeit "unique" contracts. Because they implicate the deprivation of human freedom, the rules governing their interpretation, although having their roots in the principles of contract law, also acknowledge that "concern for due process outweigh[s] concern for freedom of contract." United States v. Sandles, 80 F.3d 1145, 1148 (7th Cir.1996). Moreover, as the Guidelines themselves make clear, although the plea agreement binds the parties, it does not bind the court. The court is not a party to the contract; it has the independent duty to decide the matter before it according to law. The court has the discretion, as the Guidelines specifically provide, to " 'determine the facts relevant to sentencing.' " Id. (quoting U.S.S.G. § 6B1.4(d), p.s.). Indeed, the Guidelines commentary notes that, "[e]ven though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4, p.s., comment. Nevertheless, it hardly needs to be emphasized that plea agreements are not "inconsequential gestures," Sandles, 80 F.3d at 1148, and the district court ought to treat the factual stipulations of the parties as deserving of great weight in the absence of significant evidence in the record to the contrary. With re-

spect to questions of law, the district court must, of course, remain the final authority at the trial level. The parties' stipulation to a particular view of the law, although constituting, under appropriate circumstances, waiver of the issue, cf. United States v. Flores–Sandoval, 94 F.3d 346, 349 (7th Cir.1996) (accepting the stipulation contained in the plea agreement), does not absolve the district court from reaching, in the course of imposing the sentence, its own view of what the law requires. We have held that the district court's application of the law to the facts of the case is a determination that we review deferentially. See United States v. Wilson, 31 F.3d 510, 516 (7th Cir.1994); United States v. Sykes, 7 F.3d 1331, 1335 (7th Cir.1993). But see United States v. Slater, 971 F.2d 626, 638 (10th Cir.1992) (reviewing application of U.S.S.G. § 1B1.3 that drug quantities constitute relevant conduct for error of law). Needless to say, as a threshold matter, the court must always determine whether any stipulation of fact or waiver of legal position is entered into by the defendant in a knowing and voluntary manner. See United States v. Padilla, 23 F.3d 1220 (7th Cir.1994) (discussing the role of the plea colloquy under Fed.R.Crim.P. 11 in ensuring the adequacy of the defendant's understanding).

Before this court, Mr. Mankiewicz makes no argument that his waiver of the "related conduct" issue was not knowing and voluntary. See United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

2. The government notes that "temporal proximity" is not one of the enumerated criteria in the Commentary's definition of "scheme or plan." That criterion relates to "same course of conduct." See U.S.S.G. § 1B1.3 comment. (n.9).

Because the district court made only conclusory statements, he submits that this court should remand for further findings by the district court.

In reply, the government submits that the district court correctly determined that the uncharged conduct, namely the 1986–89 marijuana purchases, constituted relevant conduct. It asserts that the uncharged drug transactions can be justified under either prong of U.S.S.G. § 1B1.3. First, it contends that the offense of conviction was part of "a common scheme or plan." U.S.S.G. § 1B1.3(a)(2) comment. (n.9); *see United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996). According to this characterization of the defendants' activities, from 1986 onward Mr. Mankiewicz and Mr. Zawadzki had been involved in a continuing conspiracy to deliver marijuana. According to the government, the record supports the inference that the arrangement was an ongoing operation: Mr. Mankiewicz had a large, established customer base, an experienced partner (Mr. Zawadzki), and a storage facility for the marijuana (Mr. Zawadzki's warehouse). Mr. Mankiewicz' rejection of the marijuana in March 1994 shows he was not a neophyte in such matters. Moreover, continues the government, the June 1994 transaction, with its down payment of $195,000, reflects that Mr. Mankiewicz had access to large amounts of cash. Thus, the government suggests, the district court reasonably could infer that the defendants' present conspiracy was the same as the one in place between 1986 and 1989 and that the earlier purchases were part of a "common scheme or plan."

Second, the government submits in the alternative that the earlier transactions and the offense of conviction were also part of the same "course of conduct." In its view, there is a great deal of similarity in the acts: In the earlier transactions and the present one, Mr. Mankiewicz negotiated with Bob for the delivery; Mr. Zawadzki received and stored the marijuana. There was also a pattern of regularity: From 1986 to 1989, at least six loads of marijuana were delivered. When the evidence shows that the defendants were involved in an ongoing course of conduct, argues the government, temporal proximity is not an indispensable criterion.[3]

### 2.

In his plea agreement, Mr. Zawadzki admitted in paragraph 6 that

> during the time period from approximately 1986 until late 1988 or early 1989, he received additional loads of marijuana from Bob, sometimes storing the loads of marijuana in his residence. Negotiations for those loads of marijuana were handled by Udo Mankiewicz and Bob. Defendant Glenn Zawadzki's role was to receive, store and assist in subsequent distribution of the marijuana, as directed by Mankiewicz.

R.64 at 6. He further admitted that the weight of the marijuana received during that time period was approximately 800 pounds. At the change of plea hearing, this admission was recited verbatim by the Assistant United States Attorney. Mr. Zawadzki then acknowledged, while under oath, that the representation of the prosecutor was correct "in every detail." R.100 at 15A. Consequently, the factual basis for Mr. Zawadzki's participation in the earlier illegal activity was well established. There remains, however, the issue of whether Mr. Zawadzki's participation in those illegal activities can be considered "relevant conduct" within the meaning of U.S.S.G. § 1B1.3. This is an issue of law which the district court had an independent duty to determine.

An examination of the sentencing proceedings reveals that Mr. Zawadzki made a specific objection to the probation officer's report that recommended that the previous illegal activity be considered "relevant conduct." Nevertheless, although the district court concluded, in summary fashion, that the total amount involved was 2,000 pounds, it never addressed or made a specific determination as to whether the earlier conduct

---

**3.** The government also asserts that we can affirm the defendants' sentences on another ground. Because the defendants stipulated in their plea agreements that they participated in the marijuana transactions between 1986 and 1989, the government submits, we are required to treat those stipulated offenses as additional counts of conviction. *See* U.S.S.G. § 1B1.2(a), (c). The government's reliance on § 1B1.2 for the first time on appeal constitutes waiver.

constituted "relevant conduct" within the meaning of the Guidelines.

We believe that it was incumbent on the district court to address specifically the contentions of the defendant and to support its conclusion with sufficient factual determinations. *See United States v. Pollard*, 965 F.2d 283, 288 (7th Cir.1992). This a not a matter that we can resolve on the record before us without a remand to the district court. As counsel for the government quite candidly admitted in reply to the court's questions, the finding of "relevant conduct" without more temporal proximity than is involved in this case finds little support in our cases. It therefore becomes more difficult for the government to justify the sentence imposed on the basis of the other two factors. *See* U.S.S.G. § 1B1.3 comment. (n.9). On the record as presently constituted, we know that the same two defendants and Bob were dealing in marijuana on a smaller scale in 1986–89, but that is all we know. In *United States v. Cedano–Rojas*, 999 F.2d 1175 (7th Cir.1993), in which there was a 2–year hiatus between the transactions, we stated: "[W]e must be cautious and exacting in permitting such relatively stale dealings to be included in the same course of conduct as the offense of conviction." Id. at 1180. Even if the government might be allowed more temporal latitude under the "same course of conduct" approach to relevant conduct, we know nothing about the 5–year period between the transactions. We also know nothing about the regularity of the conduct; knowing that at least six loads of marijuana were delivered between 1986 and 1989 reveals nothing about the pattern of those transactions. *See United States v. Beler*, 20 F.3d 1428, 1437 (7th Cir.1994) (remanding for factfinding).

This court has made clear that, although it is highly desirable for the district court to make findings with respect to the determination of whether prior bad acts constitute "relevant conduct," we shall not reverse because of formal defects in the district court's articulation of a conclusion obviously made after thoughtful consideration of the record in its totality. *See United States v. Acosta*, 85 F.3d 275, 280 (7th Cir.1996). This record, however, does not permit us to conclude,

even inferentially, that the district court gave the matter such consideration. Accordingly, we believe that, on remand, the court must address this matter as well.

### C. Leadership Role under U.S.S.G. § 3B1.1

At sentencing, the probation officer recommended that Mr. Zawadzki be treated as a leader or organizer of the conspiracy. The Guidelines require that the offense level be increased by 2 points if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). The government must establish that the defendant "had some real and direct influence" on other participants in the criminal activity. *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir.1994). Noting the factors a court should consider when determining whether a defendant was a leader—"the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others," U.S.S.G. § 3B1.1, comment. (n.4)—Mr. Zawadzki asserts that Mr. Mankiewicz was the true leader and organizer of the offense. Mr. Mankiewicz planned with Bob, rejected the first delivery, planned another one in June, tested the samples and paid Bob $195,000. Mr. Zawadzki assisted Mr. Mankiewicz, who was his uncle and his elder. That Mr. Zawadzki asked his father to help him out does not, in his view, support an enhancement for an aggravated role. Mr. Zawadzki points out that the government did not recommend imposition of a § 3B1.1 enhancement prior to sentencing and took no position on the matter at the hearing.

We do not believe that the record in this case can support the district court's determination that Mr. Zawadzki was a leader or organizer of the conspiracy. The commentary accompanying this guideline lists many factors for the district court to consider in determining whether the defendant ought to be characterized as a leader or

organizer. This list of factors is not exhaustive. On the other hand, a single factor does not automatically justify the imposition of this enhancement. *See United States v. Billingsley*, 115 F.3d 458, 465 (7th Cir.1997). Rather, the factors must be weighed by the district court in light of the intent of the Guidelines section to differentiate among relative degrees of responsibility.

Here, the district court, acting on the recommendation of the probation officer and in face of the silence of the government, focused on the fact that Mr. Zawadzki had recruited his father to help him. His directions to his father were apparently limited to showing him where the bales ought to be stacked and asking his father to accompany the informant to the motel where the informant would deal with Mr. Mankiewicz who, it is clear, ran the operation.[4] We do not believe that this relationship is the sort of "real and direct influence, aimed at furthering the criminal activity," *Mustread*, 42 F.3d at 1103, that the enhancement was intended to punish. Although it is well established that a conspiracy may have more than one leader or organizer, the district court must evaluate the salient factors in light of the purpose of the enhancement—to assign relative responsibility. *See United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir.1991) ("The central concern of § 3B1.1 is relative responsibility."). There is no evidence in the record as to the relative share of profits [5] or the amount of discretion that Mr. Zawadzki exercised with respect to the storage of the contraband.[6] *Cf. United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994) (holding that access to storage, even when combined with ability to sell on credit and to set price, did not qualify defendant for the enhancement).

This record will not support the characterization that Mr. Zawadzki was a leader or organizer. It was error for the district court to rely on the probation officer's recommendation in the absence of record support. Upon resentencing Mr. Zawadzki, the district court shall not include this enhancement.[7] *See Brown*, 944 F.2d at 1382 ("While we are mindful that '[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy,' U.S.S.G. § 3B1.1, comment. (n.3), the facts in this case fail to support an enhancement.").

### Conclusion

The judgments of the district court are reversed, and the cases are remanded for resentencing· in accordance with this opinion.

REVERSED AND REMANDED.

---

4. *See United States v. Brown*, 944 F.2d 1377, 1380 (7th Cir.1991) (isolated incident of giving direction to another does not warrant enhancement).

5. *See United States v. Bell*, 28 F.3d 615, 618 (7th Cir.1994) (concluding § 3B1.1 enhancement was improper without evidence tending to show that the defendant claimed a larger cut of the proceeds or exercised control over another co-conspirator or over drugs).

6. *See Brown*, 944 F.2d at 1380–81 (providing site for unloading truck shipments of marijuana did not justify § 3B1.1 enhancement); *United States v. Tamez*, 941 F.2d 770, 777 (9th Cir.1991) (providing place for illegal drug activities does not warrant enhancement).

7. The probation officer opined that, in the absence of this enhancement, Mr. Zawadzki would be eligible for sentencing under U.S.S.G. § 5C1.2. The correctness of this view is not before us, and we therefore express no view as to its accuracy.