165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Terri L. DECARLO and James J. Keene, Defendants-Appellants.
 Nos. 97-2659, 97-2771.
 United States Court of Appeals, Seventh Circuit.
 Argued April 2, 1998.[1]
Decided Sept. 3, 1998.
 
 Appeals from the United States District Court for the Central District of Illinois. No. 96 CR 20074. Harold A. Baker, Judge.
 Before Hon. DANIEL A. MANION, Hon. ILANA DIAMOND ROVNER, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Terri L. DeCarlo and James J. Keene each pled guilty to narcotics offenses and were sentenced under the federal Sentencing Guidelines, DeCarlo to a prison term of 30 months and Keene to a term of 120 months. Both now raise a single issue relating to their respective sentences. DeCarlo argues that she should not have received a two-level enhancement under U.S.S.G. § 3B1.1(c) for being an organizer or leader of criminal activity, and Keene contends that the district court erred in calculating the quantity of cocaine for which he should be held responsible under U.S.S.G. § 2D1.1(a)(3). We find no error in either determination, however, and thus we affirm each defendant's sentence.
 
 I.
 
 2
 DeCarlo pled guilty to one count of possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). She subsequently objected to the recommendation in her presentence report ("PSR") that she receive a two-level enhancement under U.S.S.G. § 3B1.1(c) because she exercised a leadership role in the distribution activity.[2] The PSR based that recommendation on the fact that DeCarlo had directed her husband Mitchell Kosco's participation in the cocaine operation. The PSR specifically noted that federal drug enforcement agents used an informant to purchase cocaine from DeCarlo on August 28, 1996. The informant and an undercover agent met DeCarlo on that date at a tavern where she worked, and they expressed a desire to purchase cocaine. DeCarlo sent them to her residence, where Kosco provided them with 1.3 grams of cocaine. The informant and the undercover agent then returned to the tavern and paid DeCarlo for the cocaine. A similar transaction occurred on September 3, 1996. This time the informant appeared at DeCarlo's residence seeking to purchase cocaine. DeCarlo was at work at the time, and the informant therefore called her at the tavern. After speaking with the informant, DeCarlo directed Kosco to retrieve a quantity of cocaine from the place where it was stored and to provide the cocaine to the informant. In addition to those two specific transactions, the PSR noted that DeCarlo recruited Kosco to aid her distribution operation, and that she frequently called him at home while tending bar, directing him to bring cocaine to the tavern so that she could sell it there.
 
 
 3
 Although DeCarlo objected to the PSR's recommendation of a two-level enhancement for her leadership role, she did not present any evidence at the sentencing hearing to refute the facts the PSR recited. She simply argued that Kosco was himself intimately involved in the distribution activity and that he was not acting at her direction. The district court rejected that argument and applied the two-level enhancement, explaining that "[t]he evidence is more probably true than not that [DeCarlo] exercised at least a leadership position in connection with the drugs that were sold through the tavern where she worked and that she would have Kosco retrieve the drugs and bring them to her so she could distribute them." R. 37, at 1-2. We review the district court's finding that DeCarlo played a leadership role for clear error. United States v. Lewis, 79 F.3d 688, 690 (7 th Cir.1996).
 
 
 4
 In attempting to show that application of the enhancement was clearly erroneous in these circumstances, DeCarlo relies on this court's decision in United States v. Mankiewicz, 122 F.3d 399 (7 th Cir.1997), which we decided after the district court sentenced DeCarlo below. According to DeCarlo, Mankiewicz indicates that the facts of record in her case are insufficient to support the two-level enhancement under section 3B1.1(c). We disagree. In that case, one of the defendants, Glenn Zawadzki, contested the district court's determination that the section 3B1.1(c) enhancement should apply because he had recruited his father to help receive a single shipment of marijuana. Zawadzki had directed his father only as to where the bales of marijuana should be stacked in the warehouse where they were to be delivered. 122 F.3d at 406. We concluded that the record in Mankiewicz did not support the district court's finding that Zawadzki was a leader or organizer of the marijuana distribution conspiracy. His relationship to his father, we observed, was not "the sort of 'real and direct influence, aimed at furthering the criminal activity' that the enhancement was intended to punish." Id. (quoting United States v. Mustread, 42 F.3d 1097, 1103 (7 th Cir.1994)). We noted, in particular, the absence from the record of any evidence as to the relative share of profits derived from the conspiracy, or the amount of discretion Zawadzki exercised with respect to the storage of the marijuana. Id.
 
 
 5
 The record supporting the section 3B1.1(c) enhancement here is much more substantial than that in Mankiewicz. Here, there is uncontested evidence in the PSR that DeCarlo directed Kosco to deliver cocaine to a purchaser at their home on two separate occasions. Moreover, although Kosco delivered the cocaine to the informant during the August 28 transaction, the informant did not simply pay Kosco for the cocaine, but returned to the tavern to pay DeCarlo herself. The PSR also noted that DeCarlo originally had recruited Kosco to assist in her cocaine operation and that at her direction, Kosco had frequently delivered cocaine to the tavern where DeCarlo worked so that she could sell it there. These uncontested facts provide ample support for the district court's conclusion that DeCarlo played a leadership role by directing the activities of Kosco with respect to the cocaine sold out of the tavern where she worked. The district court did not clearly err by applying the two-level enhancement here.
 
 II.
 
 6
 Keene pled guilty to his participation in a conspiracy to possess and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846. Keene subsequently objected to the recommendation in his PSR that he be sentenced on the basis of between 500 grams and 2 kilograms of cocaine. Because Keene had a prior felony drug conviction, a finding that he was responsible for 500 or more grams of cocaine meant that he would be subject to a 10 year mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(B)(ii). The district court conducted a lengthy hearing in response to Keene's objection, hearing testimony from a number of witnesses. At the conclusion of that hearing, the court determined that the probation officer's drug quantity recommendation was correct. Judge Baker provided the following explanation for that finding:
 
 
 7
 The defendant has read the presentence report. His objections to the report are set out in the addendum to the report beginning at page 19. The essence of the objections is that the defendant denies the conduct attributed to him by the witnesses who have testified against him in the matter. He denies knowing DeCarlo or Kosco. He denies having dealt with Veronica Duncan to the extent she describes. The objections really come down to a requirement on the part of the court to judge the credibility of the witnesses. The court has heard the testimony offered and is familiar with the record in this matter.
 
 
 8
 The first objection relates to the computation of the base offense level. The reporting probation officer suggests that the base offense level is 26 based on a quantity of cocaine greater than 500 grams and less than two kilograms. If I accept, and I do accept, the information contained in paragraphs 8, 10, 13, 14, 15, 17, 18, 19, 20, 22, and 25 of the presentence report, then the defendant is responsible for approximately 510 grams of cocaine. The assessment by the probation officer is correct and a very conservative assessment for the amount of cocaine chargeable to the defendant. I believe the evidence of Duncan and Ricketts. I take cognizance of the proffer that was made by the defendant himself. It is clear to the court that the greater weight of the evidence supports the recommendation of the probation officer that the base offense level be computed at 26 because of the defendant's responsibility for in excess of 500 grams of cocaine.
 
 
 9
 R. 40, at 1-2. We review the district court's assessment of the amount of drugs attributable to a conspirator under the Sentencing Guidelines for clear error. United States v. Taylor, 111 F.3d 56, 59 (7 th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 242, 139 L.Ed.2d 172 (1997). That means we will not disturb the district court's finding unless the entire body of evidence leaves us with the definite and firm conviction that a mistake has been committed. Id.
 
 
 10
 Keene's primary challenge to the drug quantity finding is addressed to the fact that the cited paragraphs of the PSR involved only 494.2 grams of cocaine, rather than the 510 grams indicated by the district court. Keene contends that this is the case because two of the cited paragraphs describe the very same cocaine transaction, and thus the amount involved in that transaction was counted twice. According to Keene, then, his sentence must be vacated because the district court's finding of 510 grams is not supported by the record.
 
 
 11
 We cannot agree, however, that the district court limited its drug quantity finding to the 510 grams allegedly represented by the cited paragraphs in the PSR. Even if Keene is correct that those paragraphs represent only 494.2 grams of cocaine, he is not entitled to be resentenced because the district court's drug quantity findings went beyond the 510 grams allegedly represented by the cited paragraphs. The PSR, for example, after reciting the evidence of drug quantity, conservatively estimated that Keene had distributed 550 grams of cocaine during the course of the conspiracy (Keene PSR at 10), and the district court noted its agreement with that conservative estimate. The court further stated that it credited the drug quantity evidence introduced through Veronica Duncan and Jeffrey Ricketts, two individuals who admitted to purchasing cocaine from Keene on a regular basis. The paragraphs of the PSR cited by the district court at the sentencing hearing do not include two additional deliveries to Ricketts to which Keene stipulated at the sentencing hearing, and those deliveries involved 14.25 and 1.78 grams of cocaine respectively. The cited paragraphs also do not include evidence introduced through Duncan relating to Keene's own statements about other contemporaneous sales. On October 3, 1996, for example, Duncan purchased 53.9 grams of cocaine from Keene, but she indicated that those 53.9 grams were taken from a package that Keene told her contained one kilogram of cocaine. Later that same month, on October 24, Duncan purchased an additional 33.1 grams of cocaine, and she indicated that on that occasion, Keene told her that he had sold 570 grams of cocaine in less than a week and that he therefore did not have much left to sell to Duncan. Finally, the district court also noted that it had considered the proffer statement Keene provided to drug enforcement agents while he was working for the government as a confidential informant. In that proffer statement, Keene admitted to being involved with the purchase of approximately three kilograms of cocaine from his supplier, an individual named Ron Circelli. That proffer statement was admitted without objection after Keene denied at his sentencing hearing that he had told the agents of his involvement with the purchase of three kilograms of cocaine.
 
 
 12
 In light of all of this additional information, it appears to us that the district court was quite correct in describing the PSR's assessment of the recommended drug quantity as "very conservative." See R.40, at 2. The record reveals that Keene was involved in large-scale cocaine dealing for an extended period of time; that record certainly does not leave us with the definite and firm conviction that the district court erred in attributing to Keene a cocaine amount in excess of 500 grams.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Argument was held in Appeal No. 97-2659 on this date. Argument had also been scheduled for that date in Appeal No. 97-2771, but on April 2, 1998, we granted a motion to waive oral argument. Appeal No. 97-2771 has therefore been submitted on the briefs
 
 
 [2]
 Section 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." U.S.S.G. § 3B1.1(c)