**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 8, 2008
Decided July 6, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 08-1575 | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| *v.* | No. 05 CR 283 |
| RAID THAHIR, *Defendant-Appellant.* | Charles N. Clevert, Jr., *Judge.* |

**O R D E R**

Raid Thahir pleaded guilty to one count of conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371. The conspiracy centered on a scheme to defraud the Women and Infant Children ("WIC") program. Thahir's sentencing guidelines range was 78 to 97 months, but the district court sentenced him to the statutory maximum of 60 months. On appeal Thahir raises four challenges to his sentence. Because none of his arguments persuade us the district court erred, we affirm his sentence.

## I. Background

The WIC program is a federally funded welfare program designed to help indigent mothers obtain wholesome and nutritious food for themselves and their infant children. Under the program WIC recipients are issued vouchers that are redeemable at WIC-approved vendors for approved food items such as infant formula. After exchanging approved goods for WIC vouchers, authorized vendors deposit the vouchers in exchange for payment from the WIC program. The program's regulations require, among other things, that WIC-approved vendors maintain inventory records of the WIC-approved goods that they sell.

Thahir pleaded guilty to conspiring to commit offenses against the United States involving fraud on the WIC program. Thahir and his brother Fuad Zaher owned and operated Mike's Foods, a convenience store in Kenosha, Wisconsin. Thahir also owned and operated Fast and Friendly Market, a nearby convenience store in Kenosha, with a different brother. Both stores were licensed under the WIC program to accept WIC vouchers, and through both stores Thahir and his brothers were able to commit fraud on the WIC program. Specifically, Thahir's stores would falsely report sales of WIC-approved items when in fact the stores' WIC recipients had exchanged their vouchers for either cash or for beer, cigarettes, candy, and other non-WIC-approved goods. Thahir and his coconspirators would also legitimately exchange WIC-approved goods for WIC vouchers, but then would buy back these goods at the other convenience store at a substantial discount and again report false sales. Thahir and his brothers would also purchase stolen WIC-approved goods from drug addicts or thieves, remove markings revealing that they were stolen, and then place the items on the stores' shelves for resale.

In June 2003, while this fraudulent operation was ongoing, the WIC program served records requests on Thahir's two stores to examine their supplier invoices for the period between May 2000 and June 2003. Thahir turned to Amjad Salem, another coconspirator, to create false invoices documenting sales of infant formula. The invoices purported to be from "Midwest Wholesale" and falsely reflected sales of infant formula during 2001 and 2002. Thahir later directed his brothers to submit these false invoices to WIC investigators.

In August 2003 Salem purchased 60 cases of infant formula from undercover law-enforcement agents, who told Salem that the cases were stolen. Thahir later bought 28 cases of formula from Salem, 15 of which were from the undercover sale. In May 2004 federal agents executed a search warrant on both Mike's Foods and Fast and Friendly Market. Their search uncovered three false purchase orders from Midwest Wholesale, four blank purchase orders from Hallah Wholesale, invoices from Salah Wholesale, and numerous receipts from local grocery stores reflecting purchases of WIC-approved goods with WIC vouchers and food stamps. Agents also uncovered 5,771 cans of infant formula,

some of which bore security tags and store markings indicating that they had been stolen from stores outside Wisconsin.

The government filed a three-count indictment against Thahir.  Count One charged Thahir with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371.  Namely, Thahir conspired to possess and sell stolen goods in violation of 18 U.S.C. § 2315, and conspired to make false documents during a governmental investigation of fraud in violation of 18 U.S.C. § 1001.  Counts Two and Three charged Thahir with using false documents in violation of 18 U.S.C. § 1001.  Thahir pleaded guilty to the conspiracy count, and the United States later dismissed Counts Two and Three.

The court determined that Thahir's applicable guidelines range was 78 to 97 months, but because the statutory maximum was 60 months in prison, the court imposed the maximum of 60 months followed by three years of supervised release.  Five days after his sentencing hearing, Thahir filed a motion under Rule 35 of the *Federal Rules of Criminal Procedure* asking the court to modify the judgment by recommending that Thahir participate in the Bureau of Prisons' 500-hour drug-treatment program.  The court conducted a hearing on the motion and decided to modify the judgment as requested.  The court sua sponte then revisited its original sentence.  The judge stated that he had given insufficient weight to the fact that Thahir may be deported and therefore decreased Thahir's sentence from 60 months to 48 months.  The government objected to the modified sentence, arguing that the district court lacked jurisdiction to resentence Thahir.  The district court agreed with the government, vacated the 48-month sentence, and reinstated the original 60-month sentence.

## II.  Analysis

Thahir raises four challenges to his sentencing, each of which is discussed below. We review a district court's application of the sentencing guidelines de novo, and we review the district court's factual determinations underlying its application for clear error. *United States v. Rollins*, 544 F.3d 820, 837 (7th Cir. 2008).  "Clear error exists only when, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made.  If there are two permissible views of the evidence, the fact finder's choice between them is not clearly erroneous."  *United States v. Hatten-Lubick*, 525 F.3d 575, 580 (7th Cir. 2008).

### A.  Leadership Enhancement

Thahir first argues that the district court should not have applied a four-point

leadership enhancement under U.S.S.G. § 3B1.1(a).  A four-point enhancement under § 3B1.1(a) is appropriate when the defendant is an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  Thahir appears to argue that (1) the criminal activity did not "involve[] five or more participants or was otherwise extensive" and (2) he was not an "organizer or leader of a criminal activity." Neither contention is persuasive.

As for the number of conspirators, the district court was justified in concluding that Thahir's two brothers, who also managed the stores and submitted false invoices to investigating authorities, were involved in the conspiracy.  Indeed, both brothers admitted their participation when they pleaded guilty to conspiracy charges against them for the same conduct.

Further, the court correctly found that Salem was a member of the conspiracy. Thahir admitted that he purchased goods from Salem suspecting that they were stolen and that Salem helped him fabricate false invoices to deceive WIC investigators.  Despite Thahir's assertions to the contrary, the court also properly concluded that Ralph Barton, one of Thahir's employees at Mike's Foods, was a member of the conspiracy.  Barton told federal investigators that he helped process stolen goods from suspected drug addicts and thieves.  Barton explained that he would inventory the goods, "clean" them of markings indicating that they were stolen, and then place them on the shelves for resale.  Thahir did not object to his presentence report ("PSR"), which contained this information regarding Barton.  Accordingly, the court did not commit clear error by concluding that Barton was "criminally responsible for the commission of the offense" and thus was a participant in the conspiracy.  *See* U.S.S.G. § 3B1.1 cmt. n.1.

Including Thahir himself, then, the court properly identified five participants in the conspiracy.  We have no trouble concluding that the district court did not clearly err in determining that the conspiracy involved "five or more participants or was otherwise extensive."  *Id.* § 3B1.1(a).

Likewise, the district court did not clearly err in finding that Thahir was an "organizer" or "leader" under § 3B1.1(a).  The purpose of this enhancement, as we have noted, is "to assign relative responsibility" among those participating in criminal activity. *United States v. Mankiewicz*, 122 F.3d 399, 406 (7th Cir. 1997).  The guidelines commentary specifies the following factors to consider in determining whether a defendant is a leader or organizer: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  U.S.S.G. § 3B1.1 cmt. n.4.  As this commentary also indicates, "[t]o

qualify for an adjustment under this section, the defendant must have been the organizer . . . of one or more other participants."  *Id.* § 3B1.1 cmt. n.2; *see United States v. Hollins*, 498 F.3d 622, 633 n.5 (7th Cir. 2007).

In light of this standard, the record contains ample evidence to support the district court's conclusion that Thahir controlled one or more participants.  First, Thahir admitted in his appellate brief that he was "the one who is most culpable" in the conspiracy.  He was the sole defendant in charge of operating both stores that committed the fraud on the WIC program.  He alone contacted Salem and traveled to Ohio to have Salem create false invoices for the stores.  Likewise, Barton referred to Thahir as the "boss" and "owner" of the stores, which is a strong indication—although not controlling, *see* U.S.S.G. § 3B1.1 cmt. n.4—that Thahir occupied a leadership position in the conspiracy.  Based on this evidence, the district court was justified in concluding that Thahir was an organizer or leader under § 3B1.1.

Thahir relies heavily on *United States v. Mankiewicz*, 122 F.3d 399, in his effort to defeat the application of the § 3B1.1 enhancement.  That case is easily distinguishable. *Mankiewicz* involved a drug transaction in which the defendant asked his father to help unload marijuana from a truck and to accompany an unsuspected undercover informant to a meeting.  We held that those two "requests" were too minimal to establish leadership under § 3B1.1: "[T]his relationship is [not] the sort of 'real and direct influence, aimed at furthering the criminal activity,' [*United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994)], that the enhancement was intended to punish."  122 F.3d at 405-06.  Thahir's role as a leader in this conspiracy was far more extensive than the defendant's in *Mankiewicz*. Thahir owned both participating stores, was the central figure in the fraudulent scheme, procured false invoices, had his brothers submit false invoices to investigating officials, and admitted to being the most culpable member of the conspiracy.

## B.  Denial of Reduction for Acceptance of Responsibility

Thahir next argues that the district court improperly denied a reduction under § 3E1.1 for acceptance of responsibility.  To be eligible for a two-level reduction under § 3E1.1(a), a defendant must "clearly demonstrate[] acceptance of responsibility for his offense."  The section's commentary states that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."  U.S.S.G. § 3E1.1 cmt. n.1(a). "Relevant conduct," in turn, includes "all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity."  *Id.* § 1B1.3(a)(1)(B).  We review the district court's refusal to grant a § 3E1.1 reduction for clear error.  *United States v. Acosta*, 534 F.3d 574, 581 (7th Cir. 2008); *see also* U.S.S.G. § 3E1.1 cmt. n.5 ("[T]he determination of the sentencing judge is entitled to great deference on review.").

The district court offered two reasons why Thahir should not receive a § 3E1.1 reduction. First, the judge believed that Thahir lied about the extent of his brother Zaher's involvement in the conspiracy. During his plea hearing and while under oath, Thahir stated that he was "very, very, very sure that my brother, Fuad [Zaher], was not involved in this." Thahir then told the judge that he, rather than Zaher, handed the false documents to investigating officials. The district court determined that these statements were knowingly untruthful; indeed, Zaher later admitted his role in submitting false invoices to WIC investigators. Second, Thahir tried to influence Barton not to cooperate with the government. While WIC officials were investigating Thahir's stores, Thahir told Barton that "it would not be in [Barton's] best interest" to talk to the officials. Thahir told Barton that if Barton went to jail, Thahir would take care of Barton's family and pay Barton's bills. The following day, Thahir offered Barton a substantial raise, from $325 per week to $450 per week.

Again, we find no clear error in the district court's analysis. As to his statements about Fuad Zaher's involvement, Thahir claims that he was "merely expressing his opinion in this matter" while at the same time accepting his own responsibility. Perhaps this is true, although we doubt it; in any event, Thahir's characterization at best is merely one permissible interpretation of his statement. It was at least equally permissible for the court to conclude that Thahir willfully attempted to minimize his brother's role in the conspiracy. Such a statement would constitute a "false[] deni[al]" of "relevant conduct," which is generally "inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(a); *see also United States v. Francis*, 39 F.3d 803, 809 (7th Cir. 1994) (holding that denial of reduction for acceptance of responsibility is warranted when defendant minimizes coconspirators' roles in a conspiracy). Thahir also had a strong motive for downplaying his brother's involvement; if the court concluded that Zaher was not a member of the conspiracy, it might have refused to apply the § 3B1.1(a) enhancement because the conspiracy involved fewer than five participants.

We also think the district court appropriately evaluated Thahir's interactions with Barton. Thahir argues on appeal that he did not try to intimidate Barton but rather told Barton that he did not have to volunteer any information to investigating authorities. The record belies Thahir's argument. Thahir directly told Barton that he should not speak with investigators; he also gave Barton a substantial raise for no apparent reason other than to dissuade Barton from exposing the fraud. Likewise, Thahir told Barton that he would cushion Barton's fall if Barton's conduct subjected him to criminal liability. Even though the government did not seek a separate enhancement for obstruction, this evidence clearly suggests that Thahir tried to obstruct or impede the administration of justice. *See, e.g.*, U.S.S.G. § 3C1.1 cmt. n.4(a) (unlawfully influencing a witness). Under the guidelines, such conduct "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* § 3E1.1 cmt. n.4. The district court had a sound basis on which to

conclude that Thahir was not eligible for the reduction for acceptance of responsibility.

## C.  Calculating the Amount of Loss

Thahir next challenges the district court's calculation of the amount of loss.  Under the guidelines, "[t]he court need only make a reasonable estimate of the loss.  The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence.  For this reason, the court's loss determination is entitled to appropriate deference."  *Id.* § 2B1.1 cmt. n.3(C).  "To be rejected, a district court's calculation must not only be 'inaccurate but outside the realm of permissible computations.'"  *United States v. Anderson*, 517 F.3d 953, 963 (7th Cir. 2008) (quoting *United States v. Peterson-Knox*, 471 F.3d 816, 822 (7th Cir. 2006)).  The district court determined the amount of loss in this case exceeded $400,000, but Thahir believes the loss should have fallen between $200,000 and $400,000.  Thahir's only argument regarding the loss amount is that the district court should not have included receipts from "Salah Wholesale" in its loss calculation.  Thahir believes that the government did not sustain its burden in proving that the receipts from Salah were illegitimate.

After reviewing the record, we conclude that the district court was justified in finding that the Salah Wholesale receipts were fraudulent and could be added to the total amount of loss.  Salah Wholesale was owned by Subhi Ahmed, who had a history of dealing in stolen goods and was deported a few years ago.  Ahmed also owned Hallah Wholesale, which was located next door to Salah Wholesale.  It is undisputed that Thahir's stores had several blank and false invoices from Hallah Wholesale.  Further, given the transportation costs of liquid formula, it appears unlikely that Thahir would have purchased legitimate formula from a Philadelphia wholesaler rather than one closer to Wisconsin.  Based on this evidence, especially Salah Wolesale's connection to Hallah Wholesale and the incriminating Hallah Wholesale evidence found in Thahir's stores, it was not clear error for the district court to conclude that the receipts from Salah wholesale were fraudulent.

## D.  The Reasonableness of the Sentence

Thahir finally argues that the district court did not adequately consider the fact that he will likely be deported and the ensuing hardship to his family.  Thahir notes that he is the sole caregiver of his three young children, who are all U.S. citizens, and that their mother, who is not a U.S. citizen, resides outside the country.  Further, Thahir argues that his family remaining in the United States does not have the means or ability to support his children.

The consequences of Thahir's actions for his children are tragic, but Thahir will

likely face deportation whether he is sentenced to 60 months or a lesser term of imprisonment. Moreover, the premise of Thahir's argument is wrong. When the district judge imposed the 60-month sentence, he specifically addressed Thahir's family situation. The judge told Thahir that his "conduct as a father is admirable." The judge also said he had received and reviewed a letter from Thahir's son and "was very touched by it." Furthermore, it was well known throughout the proceedings that Thahir would likely be deported as a result of his crime. Nevertheless, the district court concluded that "after weighing all the factors here, and taking into account your lack of candor, and the consequences of this crime, I had to reject your request for a sentence well below the guidelines, and certainly less than the statutory maximum in this case." The court likewise stated that the 60-month sentence was necessary "[e]ven in the face of my concern about the welfare of your children." Thahir's argument that the district court failed to consider Thahir's deportability or family situation is simply untenable on this record.

Finally, Thahir suggests that the district court's sua sponte decision to resentence him demonstrates that the district court's original sentence was unreasonable. We disagree. Thahir concedes that the district court did not have jurisdiction to resentence him upon Thahir's Rule 35(a) motion; a judge's change of heart does not constitute "arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a); *see also id.* advisory committee notes (The rule "is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence."); *United States v. Porretta*, 116 F.3d 296, 300 (7th Cir. 1997). The judge realized his error and reimposed the original sentence; that he improperly reconsidered the original 60-month sentence does not undermine the reasonableness of that sentence.

**AFFIRMED.**