In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1963

DAVID L. HARTJES,

*Petitioner-Appellant,*

*v.*

JEFFREY P. ENDICOTT,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-0840—**William C. Griesbach**, *Judge.*

ARGUED NOVEMBER 7, 2005—DECIDED AUGUST 8, 2006

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In 2001, David L. Hartjes pleaded
no contest in Wisconsin state court to four counts of second-
degree sexual assault, or sexual intercourse with a person
under the age of 16. His victim was his adopted daughter.
While the case was pending, other allegations arose about
Hartjes's conduct with both his adopted daughter and other
minors—allegations that neither led to charges nor were
admitted by Hartjes. At his sentencing, however, the
prosecutor mischaracterized the state of the case, indicating
to the judge that additional charges had been "read in,"
meaning that the judge could deem the charges admitted
and in that light take them into account in sentencing.
Although Hartjes's attorney did not specifically object to

this statement, he did make clear that Hartjes disputed the additional allegations. The judge sentenced Hartjes to 20 years in prison to be followed by 40 years of extended supervision. Hartjes unsuccessfully challenged his sentence in the Wisconsin state courts.

Hartjes then filed a petition for federal habeas corpus relief, in which he claimed that his counsel was ineffective, either for failing to object or for permitting a modification of his plea agreement without his consent. He argued that he should either be resentenced or permitted to withdraw his plea of no contest. While it is a matter of concern whenever a prosecutor misrepresents the state's case at sentencing, we cannot say that the decision of the Wisconsin Court of Appeals finding that defense counsel's performance met constitutional standards and that Hartjes was not prejudiced by the failure to object was unreasonable. We therefore affirm the district court's judgment denying the petition.

# I

With the benefit of a plea agreement, Hartjes pleaded no contest to four counts of sexual intercourse with a person under the age of 16 in violation of Wis. Stat. § 948.02(2). He faced up to 30 years in prison on each count. The plea agreement called for an "open sentencing," at which both sides were free to make any argument to establish what sentence would be appropriate. The plea agreement did not provide for any additional charges or potential charges to be "read in," a procedure under Wisconsin law in which the prosecutor agrees not to charge or to dismiss charges of other crimes as part of a plea agreement, and the defendant agrees that those charges can be "considered by the court at the time of sentencing." Wis. Stat. § 973.20(b). See *Austin v. State*, 183 N.W.2d 56, 58-59 (Wis. 1971) ("Under our read-in procedure, the defendant does not plead

to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense. Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum.").

Before sentencing, additional allegations surfaced that Hartjes had assaulted the victim on many occasions in addition to those listed in the charges, and that he also had sexually abused three other girls, two of whom were his biological daughters. The state, however, did not bring any additional charges. It indicated instead that none would be brought, and Hartjes never admitted to these additional allegations.

At sentencing, a new prosecutor appeared for the state and included in his description of the harm from Hartjes's crimes not only the original charged instances but the repeated abuse over "44 weekends plus three full weeks" when Hartjes had custody of his daughters. The prosecutor then indicated that he believed "by agreement of counsel[ ]that certain other conduct to which reference is made, conduct with respect to other children, even his own children[,] referred to in the pre-sentence report, is not going to be prosecuted by the district attorney's office, but can be treated as a read-in offense." The prosecutor continued, "And that means the Court can take it as true. [His adopted daughter] is not his only victim. Other children are at risk. In fact, all children are at risk [because] of his charm, his looks, his glib tongue, his manipulating manner." The prosecutor then asked that Hartjes be barred from unsupervised contact with any children under the age of 18, concluding with a repetition of his mistake about read-in offenses: "And with respect to the victim and the victims of the—what may be considered the read-in behavior, there should never be any contact at all."

Hartjes's attorney did not formally object to these references to "read-in offenses" or "read-in behavior." Indeed, he inadvertently repeated the mistake by saying "[w]ith regard to the behaviors that are being read in" as he began to clarify the status of those uncharged allegations. Nevertheless, he also made clear to the sentencing court that there was no agreement to read in charges; instead, Hartjes's counsel explained, he had merely approached the prosecutor to find out what was going on when he heard about the additional allegations and was "informed [ ] that they would not be pursuing them and that he would agree to read them in for purposes of [ ] no further prosecutions." Hartjes's attorney represented that "never was there any admission on [Hartjes's] part or on my part to this behavior. He absolutely denies any sort of sexual activity with any of his other children or any other child, for that matter." He also suggested a reason for why the prosecutor had agreed not to pursue additional charges: "I don't want to put words in [the prosecutor's] mouth either, but [ ] he believed that he had sufficient ammunition, for lack of a better term, to proceed right now and [ ] he agreed that none of the other matters would be pursued."

At sentencing, the state court observed that Hartjes's offenses were "very serious" and that "a young child [ ] will live with this for the rest of her life." The court also recalled that the victim had asked for a sentence of life in prison and observed, "There just can't be a crime that is more devastating, one that turns the stomach of an ordinary citizen, one that frightens many people for their daughters." The court never specifically either accepted or rejected the additional allegations. Ultimately, it sentenced Hartjes to 20 years in prison, to be followed by 40 years of extended supervision. In addition, the court ordered that Hartjes have "no unsupervised . . . contact with any child under the [age] of 18" and "no contact with the child victims until they are all of majority."

Several months later, Hartjes sought resentencing, contending that the state had breached the plea agreement by arguing that the additional charges had been read in. By this time, Hartjes had obtained new counsel; his original attorney testified at the hearing. The attorney testified that he went over the plea questionnaire and waiver-of-rights form with Hartjes. He testified that the additional allegations first arose in a letter sent to the judge by relatives, and that as a result he spoke to the prosecutor who "agreed that he had enough and he didn't want to pursue anything else." Hartjes's first attorney also testified, "He had talked about reading it in. And then we talked about just agreeing not to charge the matter. And my recollection of what was finally resolved was that he had agreed that [ ] they would simply agree not to charge them and agree that . . . they were done and over with." He also said that he told the prosecutor that Hartjes "absolutely denied any of those allegations with any of the other victims" and that when the prosecutor at the sentencing began talking about read-in charges, he simply failed to object: "[T]here was certainly no strategic reason. . . . I dropped the ball." The prosecution pointed out that regardless of whether the charges were read in, the sentencing court was entitled to take the uncharged offenses into account in considering the "seriousness of the offense" and the "character of the defendant." The court denied Hartjes's request for resentencing, pointing out that it had based the sentence primarily on the extensive damage Hartjes did to one victim, his adopted daughter. The court also commented that it did not "place any great emphasis" on the additional allegations, holding, "The sentence that I gave was appropriate to the four counts that [ ] he committed." Any breach by the prosecution, the court added, "was not material[ ] and substantial."

The Wisconsin Court of Appeals rejected Hartjes's arguments that the prosecution violated the plea agreement, that his trial counsel was ineffective, and that his

plea was not knowing and voluntary because he did not understand the plea agreement. See *State v. David L.H.*, No. 02-2871-CR, 667 N.W.2d 378 (Table) (Wis. App. June 24, 2003) (unpublished). The Wisconsin Supreme Court denied Hartjes's petition for review. 671 N.W.2d 850 (Wis. 2003).

Turning to the federal courts, Hartjes filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, contending again that his counsel was ineffective, that the state breached the plea agreement, and that his plea was involuntary. The district court rejected these claims but granted a certificate of appealability on both Hartjes's Sixth Amendment ineffective assistance of counsel and his Fourteenth Amendment due process/voluntariness of plea claims.

## II

In reviewing the denial of a habeas corpus petition by the district court, we are confined by the standards prescribed in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which directs us (as relevant here) to ask only whether the state court's decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In this case, there is no question that the Wisconsin Court of Appeals applied the proper law; our inquiry is therefore limited to the unreasonable application part of the test. It is by now well established that this is a highly deferential standard. As the Supreme Court put it in *Brown v. Payton*, 544 U.S. 133, 143 (2005), "[e]ven on the assumption that

[the state court's] conclusion was incorrect, it was not unreasonable, and is therefore just the type of decision that AEDPA shields on habeas review."

Hartjes's primary argument is that his lawyer was ineffective when he failed to object to the state's breach of his plea agreement, or when he tacitly agreed to modify the agreement without Hartjes's consent. Ineffective assistance of counsel claims, as the Wisconsin court properly recognized, are governed by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-part test for evaluating claims that a petitioner was denied the effective assistance of counsel: first, the lawyer's performance must have been so defective that he "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment"; second, those errors must have prejudiced the defense. *Id.* at 687. It is not easy for a petitioner to show that his counsel's performance was objectively ineffective, as "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (internal quotation marks omitted). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Id.*

Moreover, Hartjes faces a preliminary problem. His Sixth Amendment argument is premised on the assumption that there was either a breach or an unconsented modification of his plea agreement. If there was not, his ineffectiveness claim collapses. Plea agreements, of course, are contracts that must be fulfilled. See *Santobello v. New York*, 404 U.S. 257, 262 (1971). A state's promise "need not be explicit to be enforceable," but "more than an 'unfounded and unilateral belief' is required to support the defendant's assertion that the government made a particular promise." *United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999) (quoting

*United States v. O'Brien*, 853 F.2d 522, 526 (7th Cir. 1988)). Nevertheless, not every breach of a plea agreement merits relief. The breach must be material or substantial, not merely technical. See *United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005); *State v. Naydihor*, 678 N.W.2d 220, 225 (Wis. 2004) ("An actionable breach must not be merely a technical breach; it must be a material and substantial breach.") (quoting *State v. Williams*, 637 N.W.2d 733, 744 (Wis. 2002)). *Cf. United States v. Flores-Sandoval*, 94 F.3d 346, 352 (7th Cir. 1996); *United States v. Pryor*, 957 F.2d 478, 482 (7th Cir. 1992).

In this case, the Wisconsin Court of Appeals found that any breach of the plea agreement was technical, not substantial or material:

> While the prosecutor may have been technically incorrect referring to the additional allegations as read-in offenses, [Hartjes] was not deprived of a material, substantial benefit by the prosecutor's characterization. The State and the trial court are allowed to consider uncharged and unproven offenses when assessing a defendant's character and behavior patterns.

The Court of Appeals noted that Hartjes's attorney "correct[ed] the impression that [Hartjes] admitted the additional allegations" and that "[n]o material and substantial breach of a plea agreement occurs when the prosecutor's misstatement is promptly corrected and the mistake does not taint the entire sentencing proceeding." Following its decision in *State v. Knox*, 570 N.W.2d 599, 601 (Wis. App. 1997), a case in which there had been a material misstatement that was corrected, the Court of Appeals interpreted the prosecutor's mistake in Hartjes's case as one that also was corrected and that did not affect the substance of the bargain codified in the plea agreement.

We cannot say that the analysis and conclusion of the Wisconsin Court of Appeals is incorrect, let alone unreasonable. It is true that the plea agreement did not include any

read-in charges. Indeed, absent clairvoyance, it could not have, because the additional allegations had not yet been made. Furthermore, there is no indication that the state went through the formal procedures that are required by Wisconsin law to read in uncharged conduct (including some conduct from another county). See Wis. Stat. §§ 973.20 (restitution for all victims, including those from read-in offenses), 971.09 (procedures for pleading to crimes from more than one county). It also does not appear that the plea agreement was modified in any way after Hartjes's guilty plea. Hartjes's lawyer's informal conversation with the prosecutor would be insufficient to amend the agreement in the absence of Hartjes's own consent; in addition, the lawyer testified consistently that he told the prosecutor—as he later told the court— that Hartjes denied the additional allegations. Indeed, had the defense counsel not talked to the prosecutor about the new allegations, we might have been looking at a different ineffective assistance claim. As it was, counsel appears to have extracted a gratuitous promise from the prosecutor not to pursue the other charges in light of the fact that Hartjes already faced a significant prison term.

Hartjes insists, however, that the state's referral to the additional allegations as read-in crimes is, contrary to the finding of the Wisconsin Court of Appeals, a material and substantial breach of the plea agreement. Although the court would have known of the additional allegations regardless, informing the court of uncharged allegations is a far cry, Hartjes contends, from allowing the court to deem the charges admitted, which is what the use of the "read-in" term of art permitted. But we are talking here about marginal effects, and the question is whether the Wisconsin court was compelled to find that any *additional* weight the trial court may have given to these allegations was enough to create a substantial and material breach of the plea agreement. See, *e.g.*, *Naydihor*, 678 N.W.2d at 225 ("A

breach is material and substantial when it defeats the benefit for which the accused bargained.") (internal quotation omitted).

We are satisfied that the Wisconsin court's resolution of this question was a reasonable application of *Strickland*. Indeed, it is unclear how the prosecutor's reference to the additional charges as read-in charges could have defeated this particular bargain. In the plea agreement, both sides specifically reserved the right to make any argument at an "open sentencing." Even had the term "read in" never been used, the trial court would have heard of the additional allegations in a series of victim statements, including ones from the victim herself, her mother, and her grandparents. These statements referred not only to the charged incidents but to Hartjes's behavior with other young girls, including the victim's younger sisters and a friend. Under Wisconsin law, "the trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing." *Elias v. State*, 286 N.W.2d 559, 562 (Wis. 1980). Furthermore, nothing would have stopped the prosecutor from arguing that these additional unproven charges further demonstrated the quality or lack thereof of Hartjes's character and supported his request for a long term in prison.

Once the uncharged offenses were before the court, the only question is whether the reference to them as read in, rather than uncharged and unproven, matters. We acknowledge that this is not a trivial difference: it reflects the line between allegations that are admitted and those that are not. It is troubling that the prosecutor erred about the status of the unproven offenses and that once Hartjes's counsel finally spoke up, the prosecutor never corrected his position. See *Knox*, 570 N.W.2d at 600-01; *State v. Bowers*, 696 N.W.2d 255, 259-60 (Wis. App. 2005).

Nevertheless, as the Wisconsin court stressed, any mistake about Hartjes's position on these charges was clarified later in the hearing by his attorney's statement to the court that Hartjes "absolutely denies any sort of sexual activity with any of his other children or any other child, for that matter." Bearing in mind the Supreme Court's repeated insistence that federal courts give the benefit of the doubt to state courts in these situations, we conclude that the Wisconsin Court of Appeals's ruling that "[n]o material and substantial breach of a plea agreement occurs when the prosecutor's misstatement is promptly corrected and the mistake does not taint the entire sentencing proceeding" was not unreasonable.

Given that there is no material and substantial breach of the plea agreement and consequently no ineffectiveness, there is no need to consider the extent of prejudice that might have occurred from the prosecutor's misstatements. Nevertheless, we note for completeness that the Wisconsin court's holding that Hartjes suffered no prejudice from his trial counsel's conduct at sentencing also met the AEDPA reasonableness standard. The trial court was informed prior to imposing sentence that Hartjes did not admit to any additional misconduct, particularly with other children, which (the state court was entitled to find) negated any assumption that he conceded the truth of these allegations. Also, the allegations themselves were placed before the court through the statements of the victim and her family members; thus, the prosecutor introduced no new material into the proceeding.

Finally, Hartjes contends that his initial plea was involuntary because he did not know that he would be sentenced based on additional read-in charges. This argument is a bit hard to follow, because no one could have told him about the as-yet unknown accusations; we assume, however, that his basic point here is that he would have insisted on a full

trial, had he known then what he knows now. As the Supreme Court observed in *Brady v. United States*,

> the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

397 U.S. 742, 748 (1970). See generally *Boykin v. Alabama*, 395 U.S. 238 (1969). In Wisconsin, the standard to withdraw a plea post-sentencing is that the defendant must prove "manifest injustice" by clear and convincing evidence. *State v. Nawrocke*, 534 N.W.2d 624, 626 (Wis. App. 1995) ("The 'manifest injustice' test is rooted in concepts of constitutional dimension, requiring the showing of a serious flaw in the fundamental integrity of the plea.").

The Wisconsin Court of Appeals recognized this principle, but it nevertheless rejected Hartjes's argument. It reasoned that although the plea agreement did not mention read-in offenses, the State was "free to present uncharged offenses to establish his character regardless of whether he agreed." Hartjes, the Court of Appeals ruled, failed to "establish[ ] any manifest injustice that arises from characterizing the additional offenses as read-ins rather than merely uncharged offenses." To the extent that his involuntariness argument depends upon either a modification of the plea agreement or the reference to the additional allegations as "read in," this argument merely rehashes Hartjes's ineffective assistance claim. For the same reasons that the state court was not unreasonable in holding that the prosecutor's mistake was a technical rather than substantial breach of the plea agreement, it was not unreasonable in finding that this glitch in the proceedings did not undermine the voluntariness of Hartjes's decision to enter into the plea

agreement. He assured the court during his plea colloquy that he was acting of his own free will, and he knew that he faced up to 120 years in prison. There is certainly nothing to suggest that Hartjes had the unreasonable expectation that the court could not consider his character in the course of sentencing. The district court was correct in rejecting this alternate ground for habeas corpus relief.

### III

Finding no merit in any of Hartjes's arguments, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                 _____
                 *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*