In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 13-3780

MARK A. CAMPBELL,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 12 CV 225 — **Philip G. Reinhard**, *Judge.*

———————————

ARGUED SEPTEMBER 12, 2014 — DECIDED OCTOBER 20, 2014

———————————

Before EASTERBROOK, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Mark A. Campbell appeals from
the district court's denial of his petition for a writ of habeas
corpus under 28 U.S.C. § 2254. He claims that the prosecu-
tor's comments at his resentencing hearing violated his due
process rights and breached his plea agreement and that his
counsel rendered ineffective assistance in failing to object.
Campbell argues that the Wisconsin Court of Appeals un-
reasonably applied Supreme Court precedent when it decid-

ed that he could not establish that counsel was ineffective in failing to object because the prosecutor had not materially and substantially breached the plea agreement. For the reasons that follow, we affirm.

## I.    Background

Campbell pleaded guilty in Wisconsin state court to one count of first degree sexual assault of a child. The victim was his then ten-year-old daughter. At the time of the offense, the maximum sentence was sixty years. Pursuant to the plea agreement, the State agreed to dismiss three other counts and recommend a sentence of no more than twenty years, with no more than five to seven years' initial confinement and the balance as extended supervision.

The presentence investigation report recommended twenty to forty years' initial confinement and seven to ten years' extended supervision. At sentencing, the State recommended a sentence in accordance with the plea agreement. The court sentenced Campbell to a bifurcated sentence of forty years, with thirty years' initial confinement and ten years' extended supervision. Campbell appealed, arguing that the trial court failed to consider the state sentencing guidelines. The Wisconsin Court of Appeals vacated the sentence and remanded for resentencing. *State v. Campbell*, No. 2008AP2065-CR, 2009 WL 1191945 (Wis. Ct. App. May 5, 2009).

Campbell was resentenced before a different judge. A second presentence investigation report, prepared after the remand, also recommended twenty to forty years' initial confinement and seven to ten years' extended supervision. At the sentencing hearing, the prosecutor presented argu-

ments as to the sentencing factors to be considered by the court: the gravity of the offense, Campbell's character, and the need to protect the public. Starting with the gravity of the offense, he referred to "additional information in terms of the impact" on the victim, Sentencing Tr. 18 Aug. 25, 2009, and "the devastating impact" on the victim, *id.* at 19. The prosecutor said, "I can't think of a more, short of a homicide or physically injuring a child, a more horrific offense and more damaging offense committed against one's own child." *Id.*

Addressing Campbell's character, the prosecutor referred to letters that Campbell had written to his daughter's therapist, describing them as "threat[s] and ultimatum[s]" as well as manipulative and devious in tone. *Id.* at 20. He also mentioned Campbell's claim that his sister had coached the victim into saying what she had said and a letter of Campbell's seeking to lift the no-contact order against him. According to the prosecutor, "there is absolutely no remorse. There is no empathy, and there is no accountability…." *Id.* The prosecutor noted that the presentence report indicated Campbell had been diagnosed with "a personality disorder, gender identity disorder" and argued that he had "some very serious sexuality issues, very serious boundary issues." *Id.* at 22.

Turning to the need to protect the public, the prosecutor argued that the need "is extremely high," and asserted that Campbell "takes no responsibility for his behavior or his actions," and that "[h]is daughter needs to be protected from him for as long as can be humanly possible." *Id.* Then the prosecutor advised the court that "[t]he State's original agreement back almost two years ago … was a recommendation of 20 years, 20-year sentence. The State doesn't be-

lieve anything less than that would be appropriate for Mr. Campbell given the pattern of behavior on his part, given the contacts with his daughter's therapist." *Id.* Campbell's counsel did not object to any part of the prosecutor's argument.

The prosecutor did not advise the court of the State's recommendation of no more than five to seven years' initial confinement. Campbell's counsel did not object to that omission either. Instead, during his argument, defense counsel informed the court that "the plea bargain in this case was five to seven years in and the balance of 20 on extended supervision." *Id.* at 25. Counsel argued that based on Campbell's history, "that's probably where this should fall." *Id.*

The judge said that he had "listened very carefully" to the comments of the prosecutor, defense counsel, and Campbell. *Id.* at 28. The judge also stated that he considered the presentence investigation report's recommendation of twenty-seven to fifty years, with twenty to forty years' initial confinement, as well as the attorneys' recommendations, the sentencing guidelines, and the aggravating factors that the offense was "ongoing in nature, and that [Campbell] had a position of authority and trust with the victim." *Id.* at 34. The judge sentenced Campbell to a bifurcated sentence of forty-four years, consisting of thirty-four years' initial confinement and ten years' extended supervision.

Campbell filed a petition for postconviction relief in state court, alleging ineffective assistance of counsel in failing to object to the prosecutor's remarks at the sentencing hearing and in failing to object to the prosecutor's omission of the initial confinement recommendation of no more than five to seven years. The state court held an evidentiary hearing at

which it heard testimony from Campbell, the counsel who represented him at the first sentencing, and counsel who represented him at the resentencing. The court found that there had been no breach of the plea agreement and alternatively that, if there was a breach, it was a technical breach, not a material and substantial breach. The court denied the petition for relief, concluding that Campbell could not establish that counsel was ineffective in failing to object because the prosecutor had not materially breached the plea agreement. Campbell appealed.

Regarding the State's failure to recommend five to seven years' initial confinement, the Wisconsin Court of Appeals concluded that "Campbell has failed to prove that the State's conduct materially and substantially breached the plea agreement." *State v. Campbell*, 794 N.W.2d 276, 279 ¶ 9 (Wis. Ct. App. 2010). The court gave four reasons for that conclusion: (1) the prosecutor merely omitted one of the plea agreement's terms and "did not affirmatively contradict a term of the plea agreement," *id.* ¶ 10; (2) "Campbell's counsel clarified the prosecutor's omission," stating that "the plea bargain … was five to seven years in and the balance of twenty on extended supervision," *id.* ¶ 11; (3) "the prosecutor did not dispute Campbell's counsel's clarification of the plea agreement," *id.* ¶ 12, and if the prosecutor had disagreed with the defense's statement, one would expect him to have objected; and (4) the court was aware of the plea agreement's terms before sentencing, *id.* ¶ 13.

As for the prosecutor's remarks at the resentencing hearing, the court of appeals agreed with the circuit court that the "remarks did not undermine the State's sentence recommendation." *Id.* at 281 ¶ 18. While the prosecutor implic-

itly had argued "for a significant sentence," the court con-
cluded that "a twenty-year sentence is just that." *Id.* The
Wisconsin Court of Appeals determined that Campbell had
failed to show a material and substantial breach of the plea
agreement and therefore could not establish ineffective assis-
tance of counsel in failing to object to the State's conduct; the
court accordingly affirmed the trial court. *Id.* ¶ 19. Campbell
filed a writ of certiorari with the Wisconsin Supreme Court,
which denied his petition without addressing the merits.
*State v. Campbell*, 797 N.W.2d 525 (Wis. 2011).

Campbell then filed a § 2254 petition, claiming that his
counsel rendered ineffective assistance in failing to object to
the State's breach of the plea agreement. Although the peti-
tion asserted only that the Wisconsin Court of Appeals' deci-
sion was contrary to or unreasonably applied *Santobello v.
New York*, 404 U.S. 257 (1971), the district court interpreted
the petition as claiming that the appellate court unreasona-
bly applied *Santobello* and *Strickland v. Washington*, 466 U.S.
668 (1984). The district court rejected both claims and denied
the petition. *Campbell v. Tegels*, No. 12 CV 225, 2013 WL
6044406 (W.D. Wis. Nov. 14, 2013). Campbell sought a certif-
icate of appealability in this court, and one was granted on
(1) whether Campbell's due process rights were violated and
his plea agreement breached by the prosecutor's arguments
at his resentencing hearing, and (2) whether Campbell re-
ceived ineffective assistance of counsel because his lawyer
failed to object to the prosecutor's alleged breach.

## II.    Analysis

Under the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), we may grant a writ of habeas corpus on a
claim that a state court has adjudicated on the merits if the

state court's decision "was contrary to, or involved an un-reasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Lopez v. Smith*, No. 13-946, 2014 WL 4956764, at *1 (U.S. Oct. 6, 2014) (per curiam). "If no state court has squarely addressed the merits of a habeas claim, we review the claim *de novo* under the pre-AEDPA standard of 28 U.S.C. § 2243," *Ruhl v. Hardy*, 743 F.3d 1083, 1091 (7th Cir. 2014), disposing of the claim "as law and justice re-quire," *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (internal quotation mark omitted), *cert. denied*, 133 S. Ct. 2766 (2013).

We review *de novo* the district court's denial of a § 2254 petition. *Ford v. Wilson*, 747 F.3d 944, 949 (7th Cir. 2014). "[A]lthough we technically hear this appeal from the district court," *id.*, we focus on "'the decision of the last state court to rule on the merits of the petitioner's claim,'" *id.* (quoting *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir.), *cert. denied*, 134 S. Ct. 136 (2013)). Here, that was the Wisconsin Court of Ap-peals' decision denying Campbell's petition, a decision that we review with deference. *Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012).

A state court decision "unreasonably applies federal law if the 'court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case.'" *McNary*, 708 F.3d at 913 (citations omitted). An "unreasonable application of" federal law means "objec-tively unreasonable, not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). "[A] state prisoner must show that the state court's ruling on the

claim … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 131 S. Ct. 770, 786–87 (2011). When reviewing a state court decision under § 2254(d)(1), "we presume that the court's factual determinations are correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (internal quotation marks omitted).

Campbell argues that the state court unreasonably applied *Santobello* and *Strickland*. Under *Santobello*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," 404 U.S. at 262. Thus, a prosecutor's breach of a plea agreement can be actionable. *See id.* at 263. However, if the breach is insubstantial, immaterial, technical, or cured, then the defendant is entitled to no relief. *See United States v. Diaz-Jimenez,* 622 F.3d 692, 694 (7th Cir. 2010); *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006).

Under *Strickland*, a defendant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. A defendant also "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Both showings must be made; a failure of proof as to either one will defeat the claim. *Id.*

When a petitioner challenges a state court's application of *Strickland* under § 2254(d), our review is "doubly" deferential as to issues decided by the state court. *Richter*, 131 S. Ct. at 788. Unreasonableness under *Strickland* must not be equated with unreasonableness under § 2254(d). *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Because defense counsel did not object to the prosecutor's failure to make the recommendation of five to seven years' initial confinement and did not object to any of the prosecutor's sentencing arguments, the habeas petition seeks relief for alleged ineffective assistance of counsel rather than a due process violation or breach of the plea agreement. Nonetheless, the *Santobello* issue is embedded in the *Strickland* analysis. The state court and the district court correctly decided that, if there was no breach, or if any breach was not material and substantial, defense counsel's failure to object was not ineffective assistance. Thus, we consider whether the state court unreasonably applied *Santobello* in deciding that the State did not materially and substantially breach the plea agreement.

Campbell asserts that the prosecutor breached the plea agreement in two ways: first, by failing to recommend initial confinement of five to seven years, and second, by undermining that recommendation with his arguments. The issue whether a prosecutor substantially and materially breached a plea agreement is a question of law. *See United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003). As noted, a prosecutor's breach of a plea agreement can be actionable, *Santobello*,

404 U.S. at 263, but where the breach is insubstantial, immaterial, technical, or even cured, a defendant is entitled to no relief, *see Diaz-Jimenez*, 622 F.3d at 694–96; *Hartjes*, 456 F.3d at 790.

At the resentencing hearing, the prosecutor made a recommendation that Campbell receive a twenty-year sentence but neglected to recommend an initial confinement term of five to seven years. We have stated that "subsequent actions by the prosecution can justify an inference that the [prosecutor's breach of a plea agreement] was indeed harmless." *Diaz-Jiminez*, 622 F.3d at 696; *see also Hartjes*, 456 F.3d at 792 (the prosecutor's misstatement at sentencing that additional charges had been "read in," meaning that the court could deem them as admitted, was corrected by defense counsel who clarified that the defendant denied the other charges). During his argument, Campbell's counsel reminded the court that the plea bargain in the case was for five to seven years in confinement and the balance of the twenty years on extended supervision. Significantly, the prosecutor did not object. Had he disagreed with such a recommendation, one would have expected him to speak up. While the prosecutor did not take affirmative action to cure the alleged breach, the prosecutor's silence when defense counsel discussed the plea bargain can be understood as tacit agreement with it, and that tacit agreement effected a cure. At the least, it cannot be said that the Wisconsin Court of Appeals' determination that the prosecutor's breach was not material and substantial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786–87.

We now consider whether the Wisconsin Court of Appeals unreasonably determined that what the prosecutor *did* say did not materially and substantially breach the plea agreement. Although the State "is not permitted to pull the rug out from under a defendant who has negotiated a plea agreement by taking steps to induce the judge to give a higher sentence," *United States v. Hauptman*, 111 F.3d 48, 51 (7th Cir. 1997), relief is not available unless a breach is substantial, *id.* at 51–52. And as Campbell acknowledges, "*Santobello* does not specifically address implicit repudiations of a plea agreement." The Constitution does not require that a prosecutor "enthusiastically" make an agreed-upon sentencing recommendation. *United States v. Benchimol*, 471 U.S. 453, 455–56 (1985). Furthermore, a prosecutor may without breaching a plea agreement present the aggravating sentencing factors to argue that the recommended sentence is appropriate. *See State v. Naydihor*, 678 N.W.2d 220, 230–32 (Wis. 2004) (holding that the State did not breach the plea agreement where the prosecutor's arguments "supported the recommended sentence and were relevant to the pertinent sentencing factors the court was required to consider"); *State v. Williams*, 637 N.W.2d 733, 745 (Wis. 2002) ("The State must balance its duty to convey relevant information to the sentencing court against its duty to honor the plea agreement."); *see also State v. Smith*, 558 N.W.2d 379, 389 n.14 (Wis. 1997) (stating that "the primary factors" that a sentencing court "must consider are: (1) the gravity of the offense, (2) the character and rehabilitation needs of the defendant, and (3) the need for protection of the public").

Here, the prosecutor addressed the pertinent sentencing factors that the court had to consider, and recommended a sentence of twenty years. We agree with the state court and

district court that the prosecutor's remarks did not undermine the State's sentence recommendation and "balance[d] [the state's] duty to convey relevant information to the sentencing court against its duty to honor the plea agreement." Although the prosecutor's arguments emphasized negative information, it seems that there wasn't much positive to be said about Campbell or the offense. Further, the prosecutor's arguments supported the position that a significant sentence was appropriate. A bifurcated sentence of twenty years is not an insignificant sentence, and five to seven years is not a short term of imprisonment. With one possible exception addressed below, we conclude that the state court reasonably determined that the prosecutor's resentencing arguments did not materially and substantially breach the plea agreement. *See United States v. Salazar*, 453 F.3d 911, 914–15 (7th Cir. 2006) (holding that the government did not breach its plea agreement where the prosecutor referred to the defendant as "a cold-blooded killer" yet, consistent with the plea agreement, requested a sentence at the low end of the guidelines range).

That said, we are most troubled by the prosecutor's statement that Campbell's "daughter needs to be protected from him for as long as can be humanly possible." Such a statement might be construed as an argument for the maximum sentence possible, thus undermining the bargained-for recommendation. As we know, the maximum sentence Campbell faced was sixty years, consisting of forty years' initial confinement and twenty years' extended supervision. *See* Wis. Stat. §§ 948.02(1)(b), 939.50(3)(b), 973.01(2)(b). This particular statement of the prosecutor comes close to crossing that "fine line" that separates the prosecutor's conduct in conveying pertinent sentencing information from undermin-

ing the plea agreement. But even if this particular statement undermined the plea agreement, Campbell's claim still fails because, as we address below, he cannot show prejudice. And even if the prosecutor's omission of the initial confinement recommendation and affirmative arguments in combination amounted to a material and substantial breach the plea agreement, Campbell's inability to demonstrate prejudice dooms his petition.

The Wisconsin Court of Appeals determined that counsel's failure to object was not deficient, and did not reach the prejudice element of the *Strickland* test. We therefore assess this element *de novo*. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005). Setting aside the circumstances in which prejudice may be presumed, which are inapplicable here, it is not enough to show that counsel's errors might have affected the outcome of the proceeding. *Strickland*, 466 U.S. at 692–993. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The likelihood of a different outcome "must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792. Where a breach of a plea agreement denies the defendant of rights related to sentencing, "the question with regard to prejudice is not whether [the defendant] would have entered the plea" but whether the breach "affected … his sentence." *Puckett v. United States*, 556 U.S. 129, 142 n.4 (2009). The Supreme Court has observed that when the prosecutor has breached a plea agreement, the defendant "will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway (*e.g.,*

the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event." *Id.* at 141–42.

Campbell has not shown prejudice. Both presentence investigation reports recommended twenty to forty years' initial confinement and seven to ten years' extended supervision. Given those recommendations, as well as the gravity of the offense perpetrated on Campbell's own child, Campbell's personal characteristics and lack of remorse and accountability, and the need to protect the public, no reasonable person could have expected that any rational judge would sentence Campbell to anything near five to seven years' initial confinement. Indeed, at the first sentencing hearing, where the prosecutor made the bargained-for initial confinement recommendation, the judge sentenced Campbell to thirty years' initial confinement. At the resentencing hearing, where the prosecutor did not make the recommendation, a second judge sentenced Campbell to thirty-four years' initial confinement. These two terms are fairly close in length; neither term is anywhere near the bargained-for recommendation of five to seven years. This demonstrates that there is no substantial likelihood that but for defense counsel's failures to object, Campbell likely would have been sentenced to five to seven years' initial confinement.

Moreover, in determining whether a petitioner has shown prejudice, courts may consider evidence about the actual decision-making process, provided that it is part of the sentencing record. *See Strickland*, 466 U.S. at 695. The second judge explained his decision-making in reaching the sentence of thirty-four-years' initial confinement, including that:

> given your age and the age of the victim, I think that your age at release would be approximately 70 years old, and the age of the victim would be approximately mid 40s. I think that allows the victim to grow up without fear of contact with you and not only get out of her own minority … [but also] get passed young adulthood without fear of encounters with you.
>
> I also feel this gets you to an old enough age where the risks to the public would be substantially reduced because of your age. I think any less would not protect the public and also would not impact the victim.

Sentencing Tr. 36, Aug. 25, 2009. A sentence of five to seven years' initial confinement is too short to accomplish these desired ends. The judge's sentencing explanation further supports the conclusion that there is no likelihood that Campbell would have received a sentence of five to seven years' initial confinement, or even a lesser sentence, had the prosecutor made the agreed-upon recommendation. Nor has Campbell shown that he likely would have received such a term of initial confinement had the prosecutor not made the arguments that Campbell maintains undermine the bargained-for recommendation.

## III.   Conclusion

The Wisconsin Court of Appeals did not unreasonably apply *Strickland* in determining that Campbell cannot establish that his counsel was ineffective. We accordingly AFFIRM the district court's denial of Campbell's § 2254 petition.